**DRAGOR SHIPPING CORPORATION, a corporation, formerly Ward Industries Corporation, Appellant,**

v.

**UNION TANK CAR COMPANY, a corporation, Appellee.**

No. 20416.

United States Court of Appeals
Ninth Circuit.

April 7, 1966.

Rehearing Denied May 24, 1966.

Hull, Terry & Ford, Tucson, Ariz., Joseph Lotterman of Lotterman & Weiser, New York City, for appellant.

Thomas C. McConnell, Chicago, Ill., Boyle, Bilby, Thompson & Shoenhair, Tucson, Ariz., for appellee.

Before HAMLEY, MERRILL and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge:

Union Tank Car Company (Union) brought this action against Dragor Shipping Corporation, formerly Ward Industries Corporation, in the United States District Court for the District of Arizona.[1] Plaintiff sought a judgment in the sum of $1,000,000, with interest from January 1, 1964. Such relief was claimed on the basis of an allegation that Dragor had failed to fulfill its obligations, under a settlement agreement dated October 3, 1963, to pay that amount, and under a promissory note in that amount given to Union by Dragor under the terms of the agreement.

District court jurisdiction was asserted on the basis of diversity of citizenship. Union is a New Jersey corporation having its principal place of business in Illinois. Dragor is a Delaware corporation having its principal place of business in New York.

Service was made upon Dragor by delivering copies of the summons and com-

---

1. For convenience, both Dragor and its predecessor, Ward Industries Corporation, will be herein referred to as Dragor.

plaint to the Director of Incorporation of the Corporation Commission of the State of Arizona, and to the assistant secretary of Dragor's purported statutory agent, C. T. Corporation. Dragor appeared specially and moved for an order quashing, vacating and annulling the service of process as invalid, and dismissing the summons and complaint, on the ground that the court did not obtain jurisdiction over the person of Dragor or the subject matter of the action.

The motion to quash and dismiss was denied. The district court thereafter denied Dragor's motion to amend the order to add recitals thereto which would have permitted an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (1964). Dragor then moved in this court for leave to file a petition for a writ of prohibition restraining the district court from proceeding with the action in that court. We denied leave to file the petition.

Dragor then filed its answer in which it denied the essential allegations of the complaint, and raised the defenses of lack of jurisdiction, insufficiency of process and improper venue. As a part of its answer, Dragor asserted a counterclaim in which it was alleged that Union had breached the settlement agreement and a separately executed covenant not to sue. Dragor sought dismissal of the complaint and judgment against Union in the sum of not less than $1,000,000.[2]

Union, proceeding under Rule 12 (c), Federal Rules of Civil Procedure, responded with a motion for judgment in its favor on the complaint on the ground that Dragor's answer failed to state a legal defense.[3] At the same time, Union moved for dismissal of the counterclaim pursuant to Rule 12(b) (6), Federal Rules of Civil Procedure (failure to state a claim upon which relief can be granted). The motion for judgment on the complaint was granted and the motion to dismiss the cross complaint was denied.[4] Pursuant to Rule 54(b), Federal Rules of Civil Procedure, the court made an express determination that there was no just reason for delay and directed the entry of judgment on the complaint in the sum of $1,037,500. A judgment in this sum was entered on June 1, 1965. Dragor then took this appeal from the judgment and also from the earlier order denying its motion to quash, vacate and annul the service of process.

Dragor's sole contention on the appeal is that the Arizona District Court's assumption of jurisdiction over the person of Dragor and thereby over the subject matter of this action deprived Dragor of due process, and is therefore unconstitutional.[5]

The principle Dragor seeks to invoke is that due process requires that in order to subject a defendant to a judgment *in personam*, if he is not present within the territory of the forum, he must have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. See Internation-

---

2. In its counterclaim Dragor stated that, to avoid a default in answering, it had been compelled to file the counterclaim as a compulsory counterclaim, and that it did so without waiving or intending to waive the objections which it had theretofore raised and asserted, and had alleged in its answer, " * * * to the jurisdiction and venue of this court."

3. In the consideration of that motion, matters outside the pleadings, consisting of affidavits and exhibits, were presented to and not excluded by the district court. Under Rule 12(c), the motion must there-fore be treated as one for summary judgment under Rule 56, Federal Rules of Civil Procedure.

4. Union advises in its brief on appeal that trial on the counterclaim was set for December 7, 1965. At that time Dragor failed to appear and its counterclaim was dismissed for lack of prosecution. Dragor's appeal from that order is now pending in this court in Docket No. M-2709.

5. Thus Dragor does not renew here the defense, raised in its answer, that, under 28 U.S.C. § 1391(c) the district court of Arizona constituted an improper venue.

al Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95.[6]

The established facts necessary to be considered in determining whether Dragor had the minimum contacts with Arizona sufficient to satisfy this due process requirement, are set out below.

On July 29, 1947, Dragor obtained a certificate of authority from the Arizona Corporation Commission authorizing that company to transact business within Arizona. This was done in conformity with the requirements of Ariz. R.S. § 10–481. In obtaining that authority Dragor, among other things, complied with the requirement of section 10–481(A) (2) which provides that a foreign corporation must:

"* * * file with the corporation commission, in the form prescribed by the commission, an irrevocable consent to service of pleadings or process which shall become effective upon the revocation, annulment or voluntary withdrawal of the license of the corporation to do business in this state, and which shall provide that actions arising out of or involving business done or transactions arising in this state may be commenced against the corporation in any court of competent jurisdiction within this state, by the service of pleadings or process upon the commission."

While licensed to transact business in Arizona, Dragor formed a joint venture with Idaho-Maryland Industries, Inc., (IMI), a California construction company. On October 23, 1961, that joint venture entered into a second-tier subcontract with Union for the construction of facilities in California and Arizona. The Arizona construction consisted of Titan II missile launch facilities at the Davis-Monthon Air Force Base, Tucson, Arizona. During the performance of this work, IMI filed a petition under Chapter 11 of the Bankruptcy Act in the United States District Court for the Southern District of California. Certain proceedings between Dragor and IMI ensued, resulting in a compromise agreement between them under which Dragor took an assignment of all of IMI's rights under the contract between the joint venture and Union.

In May, 1962, asserting that the joint venture was unable to complete the Arizona work, Union filed a diversity action against Dragor in the United States District Court for the Northern District of Illinois, to recover losses alleged to have been sustained by reason of the asserted default. Dragor entered a general appearance in the action and moved to transfer it to the United States District Court for the District of Arizona on the ground that all matters involved in the action originated in Arizona. The case was thereupon transferred to the United States District Court for the District of Arizona, at Tucson, where it was docketed as Union Tank Car Company v. Ward Industries Corporation, Civ. 1482—Tuc. While this case was being transferred to Arizona, Dragor instituted a separate action against Union in the same Arizona court, seeking rescission of the subcontract with Union and money damages. This case was docketed as Ward Industries Corporation v. Union Tank Car Company, Civ. 1478—Tuc.[7]

6. The same principle, in effect, was applied in the subsequent Supreme Court cases of McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283. In the later decision of this court in L. D. Reeder Contractors of Arizona v. Higgins Industries, Inc., 9 Cir., 265 F.2d 768, 771, this court after saying that the problem was one of "judicial jurisdiction," approved the following statement:

"* * * judicial jurisdiction exists whenever a state has sufficient contact with a person to make the exercise of jurisdiction reasonable, i. e., to make it consistent with the requirements of due process for the state to try in its courts a particular case relating to that person."

7. As another outgrowth of the controversy which developed between these companies, Union made certain claims over against Ward in United California Bank v. Union Tank Car Company, Case No. 62–1023 JWC in the United States District Court for the Southern District of California.

Extensive pretrial proceedings were subsequently conducted. However, on October 3, 1963, just prior to the trial date of these actions, the parties entered into an agreèment of settlement. Under the terms of this agreement Union and Dragor mutually released each other from any and all actions and claims, with certain exceptions.[8] It was provided that stipulations of dismissal with prejudice would be delivered by the parties in the two Arizona actions referred to above.

With regard to the *Mosher Steel Company* action referred to in note 8, or any other action which might result from a claim asserted by Mosher Steel Company against Union or Dragor, Union and Dragor separately covenanted not to assert any claim against the other. This covenant not to sue was executed at the same time as the settlement agreement.

Under the settlement contract Dragor agreed to pay Union, on or before September 30, 1964, the sum of $1,000,000, with interest at the rate of five percent per annum, commencing from January 1, 1964, such sum to be evidenced by a non-negotiable promissory note of Dragor drawn to the order of Union. The settlement agreement further provided that Dragor would assign to William B. Browder all claims of the joint venture against Union, The Fluor Corporation, Ltd., or the United States arising out of construction of facilities at the Davis-Monthon Air Force Base, Tucson, under the contract refer-red to above. It was provided that sums actually received by Union from the Fluor Corporation, Ltd., the United States or· otherwise, after September 30, 1963, as· a· result of that contract, would be used to reduce the sum and obligation set forth in the note, according to a prescribed schedule.[9]

The settlement agreement, promissory note and covenant not to sue were executed and delivered between Union and Dragor in New York. The stipulations dismissing the two Arizona suits, called for by the settlement agreement, were executed in New York and thereafter filed in Arizona. Several months after this had been done, on April 30, 1964, Dragor deposited in the office of the Arizona Corporation Commission a "withdrawal" from Arizona. The Commission's certificate to this effect states that Dragor had completed all requirements necessary to permit the filing of the withdrawal " * * * and thereupon said corporation ceased to exist, except as to creditors."

Dragor did not pay to Union on the appointed day of September 30, 1964, the $1,000,000 called for by the settlement agreement and promissory note. Accordingly, on December 1, 1964, towards the close of the trial in the *Mosher Steel Company* action in the Arizona District Court in which both Union and Dragor were defendants, Union moved for leave to file a cross-claim against Dragor to recover

---

8. These exceptions were as follows:
     "2. This agreement shall not constitute a release by UNION or WARD of any claim which either party may have against the other arising out ‘of an action entitled MOSHER STEEL COMPANY, ET AL, VS. THE FLUOR CORPORATION, LTD, ET AL, in the U.S. District Court, Tucson District, Case No. CIV. 1605,
     "3. This agreement shall not constitute a release by WARD of the claim of IMI–WARD, a Joint Venture, for contract adjustments dated August 23, 1963 which claim shall be filed by UNION with THE FLUOR CORPORATION, LTD., and the U.S. Government with such changes therein as UNION shall make with intent to improve said claim."

9. The settlement agreement contains this further provision concerning Dragor's stipulated payment to Union:
     "In the event that the aforementioned claims have not been finally determined and paid to UNION prior to September 30, 1964, WARD shall pay the principal sum and interest as hereinbefore set forth less credits for payments made by THE FLUOR CORPORATION, LTD., or the U.S. Government to UNION prior to September 30, 1964, and UNION shall thereafter promptly pay over to WARD any sums due and payable under this paragraph No. 5 which THE FLUOR CORPORATION, LTD., or the U. S. Government shall pay to UNION thereafter."

judgment in the sum of $1,000,000 for breach of the settlement agreement and failure to pay the promissory note. On December 21, 1964, the court in that case denied the motion.

Two days later Union commenced the action now before us, making the same claims that it had sought to assert as a cross-claim in the *Mosher* case. As before stated, copies of the summons and complaint were served upon the Arizona Commission and Dragor's purported statutory agent.[10] Dragor responded with its motion to quash and dismiss in which that company advanced the constitutional argument which it renewed in its answer and reasserts on this appeal.

■ Union's claims against Dragor, asserted in this suit, are based upon the alleged breach of the settlement contract and nonpayment of the promissory note. If that contract and promissory note have a "substantial connection" with Arizona, the requirements of due process have been satisfied. See McGee v. International Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223.

Union argues, in effect, that this contract and note have substantial connection with Arizona because, although executed and delivered in New York, they were intended to compose differences between the parties arising from their business dealings with each other in Arizona.

All business dealings in Arizona between Union and Dragor had ceased before the settlement agreement was executed. There remained certain legal claims, one against the other, arising from those dealings. Those legal claims were, with the exceptions referred to in note 8, completely superseded and extinguished by the settlement agreement and promissory note.[11] No contention

raised in Union's complaint or Dragor's answer brings into question any issue of fact or law pertaining to the former dealings between these parties in Arizona. The claims sued upon neither arise from nor involve the prior dealings, but are concerned only with whether there has been a breach of the subsequently-executed settlement agreement and note.

■■ In *McGee*, supra, no activity apart from or antecedent to the contract was relied upon by the court in holding that the contract sued upon was sufficiently connected with the forum state to satisfy the due process requirements. It would not be correct, however, to say that such activity will never be relevant in establishing the necessary minimum contact. A contract upon which suit is brought may bring into issue prior dealings between the parties in the forum state, and these dealings may well provide a basis for jurisdiction. But where the agreement sued upon is in the nature of a settlement of existing claims, and the only issues presented relate to its breach and not its validity, we think the antecedent dealings are without constitutional significance and do not provide the necessary substantial connection.

Union further contends that under the settlement agreement the obligation upon which this suit was brought did not become effective until the two Arizona suits (Civ. 1482—Tuc. and Civ. 1478—Tuc.) were dismissed, and that, under the agreement, the dismissal of those suits was a condition to the delivery of the promissory note.

Nothing contained in the settlement agreement supports either of these assertions. Under that agreement Dragor was obliged to join in the dismissal of the Arizona suits. It did so. If it had not done so it would have been liable under

---

10. It is not contended that the summons and complaint did not reach Dragor or, that Dragor did not have actual notice of the pendency of this suit.

11. See Pacheco v. Delgardo, 46 Ariz. 401, 52 P.2d 479, 480, 103 A.L.R. 494; Cano

v. Arizona Frozen Products Co., 38 Ariz. 404, 300 P. 953; Wilson v. Bogert, 81 Idaho 535, 347 P.2d 341, 345.

the contract which was in effect when executed and delivered. The note was executed and delivered simultaneously with the settlement agreement in performance of one of the terms of the agreement. Had Dragor failed to execute and deliver the note it would have breached the settlement agreement.

The execution and delivery of the note took place in New York and so could not, in any event, have significance where the inquiry concerns activity in the forum state. The stipulations dismissing the Arizona suits were executed in New York but filed in Arizona. Such filing was long prior to September 30, 1964, when, Union asserts, Dragor committed the breaches sued upon. The filing of these dismissals constitutes an isolated inconsequential act having no legal significance in this law suit. It does not provide a substantial connection of the kind referred to in *McGee*.[12]

Union argues that jurisdiction over Dragor was secured pursuant to Rule 4(d)(3) of the Federal Rules of Civil Procedure and Ariz. R.S. § 10–481. It is sufficient to say that the service of process thereby authorized must pertain to an action arising out of or involving business done or transactions arising in Arizona. Ariz. R.S. § 10–481(A)(2); Arizona Barite Co. v. Western-Knapp Engineering Co., 9 Cir., 170 F.2d 684, 687. The claims here asserted by Union do not arise out of or involve business done or transactions arising in that state. They pertain only to the settlement agreement and note executed and delivered in New York.

Union points out that the certificate of the Arizona Commission provides that Dragor is no longer present in Arizona "except as to creditors," and argues that Union qualifies as a creditor. In our opinion, however, the quoted words are intended only to preserve such right as a creditor may assert under Arizona R.S. § 10–481(A)(2). That, as we have seen, is the right to subject Dragor to personal jurisdiction in the courts of Arizona by service of pleadings or process upon the Commission, but only with regard to actions arising out of or involving business done or transactions arising in Arizona.

The result which we reach here places no hardship upon Union, but protects Dragor from the hardship of being hauled across the country to defend itself in a suit exclusively predicated upon claims arising in New York. Union is a New Jersey corporation and has its principal place of business in Illinois. Nothing in this record suggests how it will be prejudiced by suing Dragor in Delaware, where it was incorporated, or New York, where it has its principal place of business and where this cause of action arose. Arizona has no interest in providing Union with a forum for such an action.

Reversed.

---

12. Nor does such act constitute the doing of business in Arizona. This is true because: (1) the only doing of business which is significant is that which is taking place when the cause of action arose or when the suit was begun, and here the filing was long prior thereto; and (2) participation in litigation in the courts of a state does not constitute the doing of business within that state. Martin v. Bankers' Trust Co., 18 Ariz. 55, 156 P. 87, 90; Compagnie Du Port De Rio De Janiero v. Mead Morrison Mfg. Co., D.C.D.Me., 19 F.2d 163, 169; Edward Sales Co. v. Harris Structural Steel Co., D.C.D.Me., 17 F.2d 155, 157.