**WEST AMERICAN INSURANCE COMPANY, Appellant,**

v.

**WESTIN, INC., etc., Respondent.**

**No. C6–82–69.**

Supreme Court of Minnesota.

Aug. 26, 1983.

Jardine, Logan & O'Brien, Carol A. Hooten and George W. Kuehner, St. Paul, for appellant.

Doar, Drill & Skow, Thomas D. Bell, New Richmond, Wis., for respondent.

PETERSON, Justice.

Plaintiff, West American Insurance Company (West), the insurer of a vehicle operated by Diane Butina, a Minnesota resident, settled personal injury claims that had been made against Butina as a result of an automobile accident. The accident occurred in Minnesota while Butina was returning to Minnesota after consuming alcoholic beverages in Hudson, Wisconsin. West then commenced this action seeking contribution or indemnity against defendant, Westin, Inc. (Westin), the operator of an establishment known as Dibbo's Tavern in Hudson, Wisconsin, which had sold the alcoholic beverages to Butina. Defendant's motion for dismissal of the action for lack of personal jurisdiction was granted by the Ramsey County District Court. West appeals from the order of dismissal. We affirm.

On November 16, 1978, Diane Butina and her friend Joan Koshenia, both 18 years of age and both residents of Minnesota, drove to Hudson, Wisconsin, where they consumed alcoholic beverages at Dibbo's Tavern. Hudson is located on the Minnesota-Wisconsin border, approximately 15 miles from the Twin Cities. Dibbo's Tavern is on the main street of Hudson, a short distance from Interstate Highway No. 94, which connects the metropolitan area of Saint Paul-Minneapolis with Hudson, Wisconsin. At the time of the incident, Wisconsin law permitted the sale of beer or malt liquor to persons 18 years of age or older, while Minnesota did not.[1] At approximately 3 a.m., on November 17, 1978, Butina and Koshenia were returning to Minnesota. Butina was driving. On the Minnesota side of the Hudson bridge, the Butina vehicle collided head on with an eastbound automobile operated by Edward James, a Saint Paul, Minnesota, resident. Both Koshenia and James sustained personal injuries and property damage.

West settled the claims on behalf of Butina, after which it commenced this action in Minnesota for contribution or indemnity, alleging common law negligence in the making of an illegal sale. Dibbo's Tavern moved to dismiss for lack of personal juris-

[1]. At the time of this accident, the drinking age in Wisconsin was 18. See Wis.Stat. §§ 176.30–.31 (1979–80) (current versions at Wis.Stat. Ann. §§ 125.07(1)–.07(5) (West Supp.1982)). At the same time, the legal drinking age in Minnesota was 19. See Minn.Stat. § 340.73 (1982).

diction and for failure to state a claim upon which relief can be granted. The sole contact between Dibbo's Tavern and Minnesota alleged by plaintiff was a hearsay allegation that Minnesota Highway Patrol officers, if called as witnesses, would testify that of the young people who drink and have traffic problems in the vicinity of the accident in this case, 75% have been drinking at Dibbo's Tavern. The trial judge granted the motion on the ground the "minimum contacts" essential to the exercise of personal jurisdiction over defendant by Minnesota were lacking. The trial court was of the opinion that *Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980),[2] "significantly modified" our earlier decisions in *Anderson v. Luitjens,* 311 Minn. 203, 247 N.W.2d 913 (1976), *Blamey v. Brown,* 270 N.W.2d 884 (Minn.1978), *cert. denied,* 444 U.S. 1070, 100 S.Ct. 1013, 62 L.Ed.2d 751 (1980), and *Wendt v. County of Osceola, Iowa,* 289 N.W.2d 67 (Minn.1979).

In *World-Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the United States Supreme Court issued the following admonition to state courts that attempt to assert *in personam* jurisdiction over foreign defendants:

> Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

444 U.S. at 294, 100 S.Ct. at 565.

█ It is manifestly clear that "the *defendant's* contacts *with the forum state* must be such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *World-*

*Wide,* 444 U.S. at 292, 100 S.Ct. at 564 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)) (emphasis added). It is equally apparent that due process limitations on state court jurisdiction are grounded on two separate (though related) concerns. The first consideration, stemming from the seminal case of *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1878), is for the integrity of state sovereignty and a respect for territoriality. A second, more modern, concern is a recognition of the importance of fairness toward the foreign defendant. Accommodation of these two goals is accomplished via the "minimum contacts" requirement. The United States Supreme Court in *World-Wide* states:

> The concept of minimum contacts, in turn, can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

444 U.S. at 291–92, 100 S.Ct. at 564.

█ In *World-Wide* and *Rush,* the United States Supreme Court attempted to slow the inexorable expansion of jurisdiction in state courts by underlining the significance of territoriality and de-emphasizing the relative importance of "fairness" to the defendant. *See generally,* Jay, *"Minimum Contacts" as a Unified Theory of Personal Jurisdiction: A Reappraisal,* 59 N.C.L. Rev. 429, 450 (1981); Note, *World-Wide Volkswagen Corp. v. Woodson: A Limit to the Expansion of Long-Arm Jurisdiction,* 69 Calif.L.Rev. 611, 615–16 (1981). These cases evidence a dramatic shift in the constitutional theoretical underpinnings of personal jurisdiction. After *World-Wide* and

2. In its memorandum attached to the order of dismissal, the trial court did not refer to *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). However, in an analysis of the issue of personal jurisdiction over a resident of a foreign state, that case must also be considered.

*Rush,* the critical focus in any jurisdictional analysis ·must be on "the relationship among the defendant, the forum and the litigation." *Rush,* 444 U.S. at 327, 100 S.Ct. at 576 (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). This tripartite relationship is defined by the defendant's contacts with the forum *state,* not by the defendant's contacts with *residents* of the forum. *See, e.g., Hanson v. Denckla,* 357 U.S. 235, 250–55, 78 S.Ct. 1228, 1237–40, 2 L.Ed.2d 1283 (1958); *Aaron Ferer & Sons Co. v. Atlas Scrap Iron,* 558 F.2d 450, 455 n. 6 (8th Cir.1977).

We addressed the issue of personal jurisdiction over border state liquor vendors in *Blamey v. Brown,* 270 N.W.2d 884 (Minn. 1978), *cert. denied,* 444 U.S. 1070, 100 S.Ct. 1013, 62 L.Ed.2d 751 (1980), and *Anderson v. Luitjens,* 311 Minn. 203, 247 N.W.2d 913 (1976).[3] In *Anderson,* we held that Minnesota courts could exercise *in personam* jurisdiction over the operator of an Iowa tavern located 3 miles south of the Minnesota-Iowa border when alcoholic beverages had been illegally sold by the tavern to Minnesota residents who subsequently became involved in a Minnesota automobile accident. The Iowa tavern made 8% of its sales to Minnesota residents. We noted that this fact made it "reasonable for [the defendant] to foresee that [making illegal sales] * * * *might lead to consequences* such as those which resulted here and that those consequences might occur *in Minnesota.*" 311 Minn. at 209, 247 N.W.2d at 916 (emphasis added).

In *Blamey,* a case factually very similar to the present matter, we upheld jurisdiction over a Hudson, Wisconsin, bar owner. The bar owner there sold alcoholic beverages "off sale" to a Minnesota minor who had driven to Hudson to take advantage of Wisconsin's more liberal liquor laws.

In both cases, we upheld personal jurisdiction over border state liquor vendors for essentially three reasons: (1) the consequence of the sale of liquor, *i.e.,* an accident in Minnesota, was foreseeable by the defendant; (2) Minnesota had a "strong interest" in providing a forum for injured Minnesota plaintiffs; and (3) the short distances involved vitiated any inconvenience to the defendants. While this rationale was perfectly valid at the time these decisions were rendered, we are compelled to conclude that subsequent developments in this case law have vitiated the vitality of *Blamey* and *Anderson.*

In *World-Wide,* the United States Supreme Court expressly rejected as a basis for jurisdiction the type of "foreseeability" considerations that are central to the *Blamey* and *Anderson* rationale. Justice White wrote for the United States Supreme Court:

> [T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

444 U.S. at 297, 100 S.Ct. at 567. We recently stressed this point in *Dent-Air, Inc. v. Beech Mountain Air Services, Inc.,* 332 N.W.2d 904, 907 (Minn.1983).

The second part of the *Blamey-Anderson* jurisdictional paradigm fares no better. Minnesota's interest in providing a forum, standing alone, does not support the attempted exercise of personal jurisdiction over a foreign defendant. In essence, this consideration is the ·precise opposite of the correct form of analysis. That is, it mistak-

---

**3.** *Wendt v. County of Osceola, Iowa,* 289 N.W.2d 67 (Minn.1979), cited by West, is distinguishable. In that case, the defendant county was sued by a Minnesota resident who claimed the county negligently failed to post warnings on the roadway where the plaintiff was involved in a single-car accident. What distinguishes *Wendt* is that the minimum contacts with the forum state were of a substantially greater magnitude. The defendant county had a substantial contact with the forum, namely, a road maintenance agreement with Minnesota. Thus, the accident arose directly out of the defendant's contact with the forum state. 289 N.W.2d at 70.

enly focuses on the *plaintiff's* interest in having a case decided in a particular forum when *World-Wide* and *Rush* unequivocally establish that the primary focus must be on the *defendant's* interests and the *defendant's* contacts with the forum state. As we ourselves so recently stated in *Dent-Air,* Minnesota's interest in providing a forum "is not a contact and cannot establish personal jurisdiction." 332 N.W.2d at 908.

Additional support for the proposition that Minnesota's interest is irrelevant in the jurisdictional calculus is found in the facts of *Rush* itself. In that case, Minnesota had attempted to assert an interest in trying cases in its courts via a special garnishment statute (Minn.Stat. § 571.41, subd. 2 (1978)). Justice Marshall, the author of *Rush,* as well as *Heitner* and *Kulko v. California Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (two cases which obliquely suggested that the forum's interest is significant), made no mention of the Minnesota statute. At least one commentator suggests that this indicates that the proper paradigm for jurisdictional analysis recognizes "the inappositeness of any indication of forum interest to the initial determination of the defendant's constitutional contacts." Jay, *"Minimum Contacts",* 59 N.C.L.Rev. at 472. *See also Dent-Air,* 332 N.W.2d at 908–909.

■ The final *Blamey-Anderson* factor, inconvenience, is, of course, critical. However, given the United States Supreme Court's renewed emphasis on state sovereignty and territoriality, convenience alone does not suffice to make an exercise of jurisdiction over a foreign defendant constitutionally permissible. *World-Wide,* 444 U.S. at 293–94, 100 S.Ct. at 565–66. *See generally* Comment, *Federalism, Due Process and Minimum Contacts: World-Wide Volkswagen Corp. v. Woodson,* 80 Colum.L. Rev. 1341, 1352 (1980). In essence, this factor is irrelevant unless the defendant also has, as a threshold matter, sufficient contacts with the forum state. *Cf. Dent-Air,* 332 N.W.2d at 909.

The totality of these considerations compels the conclusion that the rationale advanced by this court in *Blamey* and *Anderson* is no longer a valid basis for *in personam* jurisdiction. We must thus decide whether *in personam* jurisdiction is proper in this case under the standards enunciated in *World-Wide* and *Rush.*

■ As noted previously, after *World-Wide,* the non-resident defendant's contacts with the forum must be such that it is able to reasonably anticipate being haled into the forum state's court. *World-Wide,* 444 U.S. at 297, 100 S.Ct. at 567. It might be argued that *Anderson* and *Blamey* provided this foreseeability. This line of reasoning fails because it is essentially circular. The ultimate question in this case is whether *Blamey* and *Anderson* are still good law. To answer this query by arguing that after *World-Wide,* these cases make jurisdiction by Minnesota courts "reasonably foreseeable" is to say that *Blamey* and *Anderson* are valid because *Blamey* and *Anderson* are valid.

■ According to the court in *World-Wide,* a defendant which purposefully avails itself of the privilege of conducting activities within the forum state has clear notice that it is subject to suit in the forum state. *World-Wide,* 444 U.S. at 297, 100 S.Ct. at 567. The record, however, plainly indicates that no such "purposeful availment" has occurred. In *Kreisler Mfg. v. Homstad Goldsmith, Inc.,* 322 N.W.2d 567 (Minn.1982), we described the "purposeful availment" standard as follows:

> In addition, the defendant must, by his activities in the forum state, have invoked both the benefits and the protections of the forum state's law. *Hanson v. Denckla.*

> \* \* \* \* \* \*

> In contrast to the purposeful behavior of defendants over whom jurisdiction is justified, nonpurposeful and nondeliberate behavior does not invoke jurisdiction *even where there was a form of contact with the forum.* See *Denckla* and *World-Wide Volkswagen.*

*Id.* at 571. Nothing here indicates that any such "purposeful" or "deliberate" contact with Minnesota has taken place.

 We do note that the difference in Minnesota and Wisconsin's "dram shop" laws means that Minnesota is the only forum where a remedy is available. While this may, unfortunately, be true, it is most assuredly not a fact which confers upon the courts of Minnesota jurisdiction under the facts of this case. At best, this is a case where the defendant's only demonstrable contact with the forum state is the plaintiff-insured's "unilateral activity" in driving to Minnesota.[4] Such a limited nexus with the forum state is clearly not sufficient to support jurisdiction in Minnesota. *World-Wide,* 444 U.S. at 298, 100 S.Ct. at 567; *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1239.

We do not by this opinion endorse the actions of defendant or denigrate the public policy expressed in statutes such as Minnesota's "dram shop" law—indeed, quite the contrary. We say only that affirmance in this case is constitutionally compelled. Ordinarily, we should hesitate to overturn our own precedential decisions, but where, as here, our precedent is patently contrary to constitutional principles authoritatively declared by the United States Supreme Court, we have no proper alternative.

Affirmed.

WAHL, Justice (concurring specially).

I concur with the majority opinion but would add this note. It seems likely that contacts of a qualitative nature did exist in this case, but plaintiff failed to allege such facts even though *World-Wide* and *Rush* had been decided at the time the complaint was filed. Had solicitation-type contacts been alleged, they would have been taken as true for purposes of the motion to dismiss, and jurisdiction could have been constitutionally exercised.

**4.** It is entirely conceivable that diligent investigation might have uncovered contacts sufficient to satisfy the *World-Wide* and *Rush* stan-

SCOTT, Justice (dissenting).

I respectfully dissent. While the record now before this court does not indicate any "purposeful" or "deliberate" contact with Minnesota, I would remand the case for discovery limited to the issue of jurisdiction.

Under Minn.R.Civ.P. 26.02(1), parties may obtain discovery which relates to a claim or defense. Lack of personal jurisdiction is a "defense" under Minn.R.Civ.P. 12.02(2). The United States Supreme Court has endorsed this procedure under the federal rules. *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 n. 13, 98 S.Ct. 2380, 2389 n. 13, 57 L.Ed.2d 253 (1978).

Borderline liquor establishments which solicit Minnesota customers should foresee being brought into court in Minnesota when injuries and damage occur in this state as a result of their negligent business activities.

TODD, Justice.

I join in the dissent of Justice Scott.

YETKA, Justice.

I join the dissent of Justice Scott.

dards, but we must take the limited record as it comes to us.