**BLC INSURANCE COMPANY, Appellant,**

v.

**WESTIN, INC., Respondent.**

No. C6-84-1422.

Court of Appeals of Minnesota.

Jan. 8, 1985.

Dorsey & Whitney, by Michael A. Pysno, Minneapolis, for appellant.

Doar, Drill & Skow, S.C., Thomas D. Bell, New Richmond, Wis., for respondent.

Considered and decided by CRIPPEN, P.J. and HUSPENI and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

Appellant BLC Insurance Co. commenced this contribution action against Respondent Westin, Inc., a Wisconsin corporation which owns and operates Dibbo's Bar in Hudson, Wisconsin, following settlements it made in a fatal accident. Dibbo's motion for dismissal for lack of personal jurisdiction, treated as one for summary judgment, was granted. We reverse.

## FACTS

In March 1981, Robert Messetler, age 18, was killed in a two-car accident near Stillwater, Minnesota. Messetler was returning to Minnesota after a night of drinking at Dibbo's Bar in Hudson, Wisconsin, located on the Minnesota-Wisconsin border. His blood alcohol concentration was .21. The two passengers in Messetler's car and the driver of the other car were seriously injured. Messetler's automobile was insured by appellant BLC Insurance Co. Wisconsin's drinking age at the time of the accident was 18, while Minnesota's was 19.

Dibbo's is owned and operated by respondent Westin, Inc., a Wisconsin corporation. At the time of the accident, Westin, on behalf of Dibbo's, was advertising on only one Twin City radio station, KQRS-FM. KQRS's target audience are persons between the ages of 18 and 30. Dibbo's Bar first advertised on KQRS in 1979, running twelve commercials between November 20 and November 24, 1979. From March 1980 through November 1982, Dibbo's began to advertise by 30 second commercials on an average of 10 to 15 times per week. The scripts informing listeners of daily drink specials were always approved by Dibbo's. The advertising cost approximately $11,000 in 1980 and $12,000 in 1981. In 1981, Westin purchased in excess of $20,000 of goods and services, excluding advertisement costs, in Minnesota.

## ISSUE

Did Westin, Inc. have the requisite minimum contacts with Minnesota to permit Minnesota to exercise personal jurisdiction over it?

## ANALYSIS

Westin argues it does not have sufficient "minimum contacts" with Minnesota so as to permit a constitutional exercise of personal jurisdiction under Minnesota's long-arm statute. The long-arm statute provides for jurisdiction over a foreign corporation when that corporation commits an act outside of Minnesota that causes injury or property damage inside the state. Minn. Stat. § 543.19, subd. 1(d) (1982).

We realize BLC relied on section 543.19, subd. 1—"Commits any act in Minnesota" —when it commenced the present action against Westin. Under the former language of clause (c)—"Commits any tort in Minnesota"—BLC would have had jurisdic-

tion. The supreme court in *Anderson v. Luitjens,* 311 Minn. 203, 247 N.W.2d 913 (1976), interpreted the former language so that an injury occurring in Minnesota constituted commission of a tort in the state. *Id.* at 206, 247 N.W.2d at 915. Because Messetler was injured in Minnesota, clause (c) would have been applicable. This rendered superfluous clause (d) which provided for jurisdiction when a tort was committed "outside of Minnesota causing injury or property damage within Minnesota." In response to the court's decision in *Luitjens,* the legislature amended the statute by, inter alia, substituting the word "act" to replace the word "tort" in clauses (c) and (d). 1978 Minn.Laws ch. 780, § 2. Because we believe clause (d)—"Commits any act outside Minnesota causing injury or property damage"—is clearly applicable to this case, we will treat BLC as having relied on the same. "All pleadings shall be so construed as to do substantial justice." Minn.R.Civ.P. 8.06.

■ "Minnesota interprets its long-arm statute * * * to extend personal jurisdiction in its courts to the limits of the due process clause of the Fourteenth Amendment." *Mid-West Medical, Inc. v. Kremmling Medical-Surgical Associates,* 352 N.W.2d 59, 60 (Minn.Ct.App.1984). Due process requires sufficient minimum contacts between the nonresident defendant and the forum state so that requiring them to defend in the state does not violate "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The nonresident must be able to reasonably anticipate being haled into the forum state's court. *World-Wide Volks-*

*wagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ Minnesota has adopted the following five factor test:

An analysis of minimum contacts requires consideration of (1) the quantity of contacts, (2) the nature and quality of contacts, (3) the source and connection of those contacts to the cause of action, (4) the interest of the forum state, and (5) the convenience of the parties.

*Dent-Air, Inc. v. Beech Mountain Air Service, Inc.,* 332 N.W.2d 904, 907 (Minn.1983). The first three factors are the primary factors. *Rostad v. On-Deck, Inc.,* 354 N.W.2d 95, 98 (Minn.Ct.App.1984).

■ Westin's 1981 purchase of goods and services in Minnesota was not in itself a sufficient contact with Minnesota. *Janssen v. Johnson,* 358 N.W.2d 117 (Minn.Ct. App.1984); *see Dent-Air, Inc.,* 332 N.W.2d at 907. In *Janssen,* we held that Johnson, a Wisconsin bar owner, did not have sufficient contacts to permit Minnesota courts to exercise personal jurisdiction over him, where the only Minnesota contacts were purchasing bar supplies and equipment from a St. Paul supplier and hiring a Minnesota attorney. We noted, however, that Johnson did not "actively solicit" Minnesota patrons and that "a decisive fact is that Johnson never advertised in Minnesota newspapers after he purchased the bar." *Id.* at 120.

■ In the present case, Westin actively solicited Minnesota customers. Westin advertised extensively in Minnesota from November 1979 to November 1982 through as many as 15 commercials per week, each commercial about 30 seconds in length, costing approximately $23,000 between 1980 and 1981. Such conduct is a purposeful and active solicitation of Minnesota customers.

Westin relies heavily on the supreme court's decision in *West American Insur-*

*ance Co. v. Westin, Inc.,* 337 N.W.2d 676 (Minn.1983), which also involved the issue of personal jurisdiction over Westin in a 1978 drinking related accident. We find that case to be distinguishable because in *West American,* the sole contact between Westin and Minnesota was a hearsay allegation that Minnesota Highway Patrol officers would testify that of the young people who are involved in drinking related accidents on the Minnesota side of the Hudson Bridge, 75% had been drinking at Dibbo's. *Id.* at 678.

The accident in *West American* occurred on November 17, 1978, a year prior to Dibbo's advertising on KQRS. As Justice Wahl stated in *West American:* "Had solicitation-type contacts been alleged, * * * jurisdiction could have been constitutionally exercised." *Id.* at 681 (Wahl, J., concurring specially). The purposeful behavior of Westin in its advertising program in Minnesota is such that it should have reasonably anticipated being haled into court here. *World-Wide,* 444 U.S. at 297, 100 S.Ct. at 567.

### DECISION

Westin, Inc. has the requisite minimum contacts with Minnesota to permit Minnesota to exercise personal jurisdiction over it.

Reversed.