**NOW FOODS CORPORATION,**
**Respondent,**

v.

**MADISON EQUIPMENT COMPANY,**
**INC., Appellant.**

No. C2–85–2044.

Court of Appeals of Minnesota.

May 6, 1986.

Review Granted July 16, 1986.

Barry M. Lazarus, Thomas R. Kelley, Lazarus and Kelley, Minneapolis, for respondent.

David G. Newhall, Steven E. Rau, Lindquist & Vennum, Minneapolis, for appellant.

Heard, considered and decided by the court en banc, consisting of POPOVICH, C.J., and FOLEY, SEDGWICK, HUSPENI, NIERENGARTEN, RANDALL and CRIPPEN, JJ.

## OPINION

FOLEY, Judge.

This appeal is from denial of a motion to dismiss for lack of personal jurisdiction. Appellant Madison Equipment Company, Inc. argues that any exercise of personal jurisdiction over it would violate the due process clause. Respondent Now Foods, Inc. contends that the trial court's assertion of jurisdiction does not violate fairness or substantial justice. Because sufficient minimum contacts do not exist between Madison and Minnesota, we reverse with directions to dismiss the complaint.

## FACTS

Madison is engaged in the business of purchasing and selling used food packaging and processing equipment. Its home offices and operations are located in Chicago, Illinois. It maintains no offices outside Illinois and does not have any sales representatives outside Illinois. Madison regularly advertises its products for sale in national trade magazines.[1]

Now Foods is a Minnesota corporation engaged in the manufacture and processing of food items for restaurant use. Its principal place of business is in St. Louis Park, Minnesota. In October 1983, the president of Now Foods, Robert Broich, saw one of Madison's advertisements for used Groen steam jacketed kettles in a national trade magazine. Broich telephoned Robert Tokarz, one of Madison's sales representatives in Chicago, in response to the ad and later traveled to Chicago to inspect the kettles. During this inspection, Broich was given an inventory description which represented that the kettles were properly coded and rated by the American Society of Mechanical Engineers (ASME) to pressures of at least 25 pounds per square inch (psi). Employees of Madison also made oral representations to Broich, further assuring him that the kettles had met all the required tests.

A sales order was prepared and Broich tendered a $10,000 check to Madison. Madison made the shipping arrangements and paid the costs of shipping. The kettles were shipped by truck "F.O.B. Madison Equipment Co., Chicago, Illinois." Madison sent Now Foods a confirming invoice showing a zero balance due.

Now Foods later discovered that, contrary to Madison's representations, the kettles were not properly tested and rated in accordance with ASME standards to 25 psi and that the kettles could only be used in Minnesota at pressures not to exceed 15 psi. When Broich called Tokarz in Chicago, Tokarz allegedly advised him "to go ahead and use them at 25 psi, not tell anybody, and no one would ever find out." Tokarz informed Broich that the sale of used kettles was final and that they could not be returned.

Now Foods commenced this action, alleging misrepresentation, breach of contract, breach of warranties under the Uniform Commercial Code, and unfair trade practices under Minn.Stat. § 325D.46 (1984). Madison chose not to answer and instead moved to dismiss for lack of personal jurisdiction under Minn.R.Civ.P. 12.02. A hearing was held on June 25, 1985. The parties submitted affidavits and no testimony was taken.

The trial court found Now Foods had made a prima facie showing that sufficient minimum contacts existed for the exercise of personal jurisdiction over Madison. Madison appeals the denial of its motion to dismiss under Minn.R.Civ.App.P. 103.03(e).

## ISSUE

Did the trial court err in finding that Madison has sufficient minimum contacts with Minnesota to permit exercise of personal jurisdiction over it?

## ANALYSIS

Before a Minnesota court may exercise personal jurisdiction over a nonresi-

---

1. Although Madison asserts it only advertises "periodically" in national trade journals, the allegations of Now Foods, as the party seeking to establish jurisdiction, are to be taken as true. *See Hardrives, Inc. v. City of LaCrosse,* 307 Minn. 290, 240 N.W.2d 814 (1976).

dent defendant, two criteria must be met. First, the long-arm statute, Minn.Stat. § 543.19 (1984), must be satisfied. Second, there must exist "minimum contacts" between the defendant and this state such that assertion of personal jurisdiction does not offend the due process clause. *Ulmer v. O'Malley*, 307 N.W.2d 775, 777 (Minn. 1981). The reach of a state's long-arm statute is a question of state law, while the extent to which the reach of the long-arm statute is limited by due process is a question of federal law. *Scullin Steel v. National Railway Utilization Corp.*, 676 F.2d 309, 311 (8th Cir.1982).

The portion of the Minnesota long-arm statute applicable to this case authorizes the exercise of personal jurisdiction if the nonresident individual:

Commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found:

(1) Minnesota has no substantial interest in providing a forum; or

(2) the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice[.]

Minn.Stat. § 543.19, subd. 1(d).

Minnesota has an obvious interest in providing a forum in this case. Now Foods alleges a violation of a Minnesota state statute designed for the protection of its citizens. Madison seems not to contest Minnesota's interest in providing a forum but instead asserts that it falls within the scope of the second exception.

■ This second exception insures that maintenance of the suit in Minnesota will not offend "traditional notions of fair play and substantial justice" and has been interpreted as representing a codification of the "minimum contacts" test first articulated in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *See Viske v. Flaby*, 316 N.W.2d 276, 282 (Minn.1982). In determining whether the requisite minimum contacts exist, five factors are considered:

(1) the quantity of contacts,

(2) the nature and quality of contacts,

(3) the source and connection of those contacts to the cause of action,

(4) the interest of the forum state, and

(5) the convenience of the parties.

*See Dent-Air, Inc. v. Beech Mountain Air Service, Inc.*, 332 N.W.2d 904, 907 (Minn. 1983) (applying this five-factor test which was first set out in *Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir.1965)). The underlying concern of the analysis is the "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977); *Land-O-Nod Co. v. Bassett Furniture Industries*, 708 F.2d 1338, 1340 (8th Cir.1983).

In this case, the contract itself does not provide any contact with Minnesota: all negotiations took place over the telephone or in Chicago, the sale was completed in Chicago, and the kettles were delivered "F.O.B. Chicago." This appears to be one isolated sale and there is no evidence of a continuing business arrangement between the parties. Although Now Foods alleges that Madison does business in Minnesota "[u]pon information and belief," the extent of that business cannot be ascertained from the record. Madison is an Illinois corporation with its principal place of business in Chicago. It is not licensed to do business in the state of Minnesota and it has no offices or sales representatives located here.

The sole contact between Madison, the state of Minnesota, and this lawsuit is through Madison's advertising. Now Foods asserts that Madison's ads appear "regularly" "in several nationally distributed trade publications including Prepared Foods, Food Engineering and Food Processing." Madison admits the ads appear "periodically" in journals that may be distributed in Minnesota.

■ When the quantity of contacts is minimal, as here, the nature and quality become dispositive. *Maiers Lumber &*

*Supply v. Chancey Trailers,* 354 N.W.2d 585, 587 (Minn.Ct.App.1984). *See Marquette National Bank v. Norris,* 270 N.W.2d 290, 295 (Minn.1978). In reviewing the nature and quality of the contacts, it must be ascertained whether the nonresidents "purposefully availed" themselves of the benefits and protections of Minnesota law. *Dent-Air,* 332 N.W.2d at 907 (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). This insures that a nonresident defendant will be able to reasonably anticipate being haled into the state's court. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Solicitation-type contacts have been held to be "purposeful" and sufficient for the exercise of personal jurisdiction if extensive and directed at Minnesota customers or if combined with other qualitative contacts. *See BLC Insurance Co. v. Westin, Inc.,* 359 N.W.2d 752, 754 (Minn.Ct.App. 1985), *pet. for rev. denied,* (Minn. Apr. 15, 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 132, 88 L.Ed.2d 109 (1985) (minimum contacts exist where defendant bar "actively solicited Minnesota customers" by advertising "extensively in Minnesota * * * through as many as 15 [radio] commercials per week, each commercial about 30 seconds in length, costing approximately $23,-000"); *State by Humphrey v. Columbia Pacific University,* 357 N.W.2d 359 (Minn. Ct.App.1984), *pet. for rev. denied* (Minn. Feb. 15, 1985) (sufficient minimum contacts existed when nonresident university was shown to have advertised in national publications it knew would likely be distributed in Minnesota, entered into contracts with Minnesota residents which required continual communication between those residents and the university, received tuition payments made from Minnesota, and sent paychecks to Minnesota faculty members).

■ It does not appear that Madison's advertising was designed to purposefully avail itself of the benefits and protections of Minnesota law. Although the facts upon which Now Foods relies are sketchy at best, even if it is assumed that the magazine in which the ad appeared was distributed in Minnesota, that fact alone is insubstantial and insufficient to support the exercise of personal jurisdiction. There is no evidence to suggest that Madison's conduct was a "purposeful and active solicitation of Minnesota customers." *BLC Insurance,* 359 N.W.2d at 754. This case is factually more similar to cases which have found insufficient minimum contacts. *See, e.g., Erickson For and On Behalf of Erickson v. Spore,* 618 F.Supp. 1356 (D.Minn. 1985) (no jurisdiction over defendant bar where its only contacts with Minnesota prior to the accident were advertising in a small Wisconsin publication with limited circulation in Minnesota and there was no assertion that the advertising was connected with the injured party's decision to go to the bar); *Larson v. Association of Apartment Owners of Lahaina Shores,* 606 F.Supp. 579, 582 n. 3 (D.Minn.1985) (exercise of personal jurisdiction would be unconstitutional where defendant's only contact with Minnesota consisted of travel brochures which entered the state through the unilateral actions of travel agents who attended trade shows outside Minnesota or through defendants' response to requests for information from Minnesota travel agents); *Goodman v. Copper Mountain Resort Association,* Civ. 3–82–1461 (D.Minn.1983) (cited in *Larson,* 606 F.Supp. at 582 n. 3) (advertising in magazines and distributing brochures to travel agents within forum state does not constitute minimum contacts); *Brennan v. Westinghouse Elevator Co., Inc.,* Civ. 4–78–398, slip op. at 4' (D. Minn.1979) (cited in *Larson,* 606 F.Supp. at 582 n.3) (defendant hotel's "isolated activities in arranging advertisements in telephone directory yellow pages [in Minnesota] and * * * the occasional transmittal of promotional material to Minnesota travel bureaus" insufficient to support jurisdiction); *Mid-West Medical v. Kremmling Medical-Surgical Associates, P.C.,* 352 N.W.2d 59 (Minn.Ct.App.1984) (and cases cited therein).

The third factor, the source and connection of the contacts with the cause of ac-

tion, is considered under the minimum contacts analysis because if the claim is unrelated to the defendant's forum activities, "he may have 'no reason to expect to be haled before [the forum state's] court[s].'" *Land-O-Nod*, 708 F.2d at 1341 (quoting *Shaffer*, 433 U.S. at 216, 97 S.Ct. at 2586). Indeed, the exercise of jurisdiction is often negated (as in *Land-O-Nod*) because the contacts, even though significant in that case, were unrelated to the immediate cause of action. *See Land-O-Nod*, 708 F.2d at 1341, 1343 (no jurisdiction found where allegedly infringing mattresses had not been sold in Minnesota, even though substantial other contacts existed between the nonresident defendant and Minnesota including substantial sales of other bedding products, advertising the infringing mattresses in a national trade journal circulated in Minnesota, and when descriptive materials of the infringing product had been given to a Minnesota dealer by the nonresident at a Dallas trade show); *see also Janssen v. Johnson*, 358 N.W.2d 117 (Minn. Ct.App.1984) (minimum contacts over a nonresident bar did not exist where the only contacts with Minnesota were the regular purchase of bar supplies and equipment from a Minnesota supplier and the hiring of a Minnesota attorney). Here, the asserted connection, i.e., the trade journal advertising, is too insubstantial to provide a connecting link with the cause of action by Now Foods in Minnesota. *See Dragor Shipping Corp. v. Union Tank Car Co.*, 361 F.2d 43, 48 (9th Cir.1966), *cert. denied*, 385 U.S. 831, 87 S.Ct. 68, 17 L.Ed.2d 66 (1966) (to satisfy due process, contract promissory note upon which cause of action based must have "substantial connection" to forum).

■ The last two factors, interest of the state in providing a forum and convenience of the parties, have recently been "de-emphasized" in an attempt to slow the "inexorable expansion of jurisdiction in state courts." *West American Insurance Co. v. Westin, Inc.*, 337 N.W.2d 676, 678 (Minn.1983). Concern for state sovereignty and a respect for territoriality has regained significance:

Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 294, 100 S.Ct. at 565–566). In applying the minimum contacts analysis, it is thus more important to insure that states do not reach out beyond the limits imposed on them by their status as co-equal sovereigns in a federal system. Therefore, convenience alone is irrelevant unless the nonresident also has, as a threshold matter, sufficient contacts with the forum state. Similarly, Minnesota's interest in providing a forum, standing alone, is insufficient. Even if a state's interest is compelling, the primary focus must be on the *nonresident's interests and contacts with the forum state*, not on the resident's interest in having the case decided in its home state. *West American Insurance*, 337 N.W.2d at 679–80.

■ The result we reach in this case comports with this renewed emphasis on state sovereignty and territoriality. Under Now Foods' theory, an injured resident need only show that it was induced to enter into a contract because the nonresident had placed an ad in a national trade journal. A nonresident in this position would be subjected to the jurisdiction of all 50 states. Such a result is unacceptable without showing that other contacts exist between the nonresident and the forum or that these solicitation-type contacts were extensive and purposefully directed to customers in the forum state. To reiterate, "[i]t is a defendant's contacts with the forum *state* that are of interest in determining if in personam jurisdiction exists, not its contacts with a resident." *Aaron Ferer & Sons Co. v. Atlas Scrap Iron*, 558 F.2d

450, 455 n. 6 (8th Cir.1977) (emphasis in original). *See Hanson v. Denckla,* 357 U.S. at 250–55, 78 S.Ct. at 1237–40.

## DECISION

The trial court erred in denying appellant's motion to dismiss for lack of personal jurisdiction.

Reversed with directions to dismiss the complaint.

NIERENGARTEN and RANDALL, JJ., concur.

NIERENGARTEN, Judge (dissenting).

I respectfully dissent. Madison's purposeful solicitation of customers in Minnesota through placement of advertisements in nationally distributed trade journals supplies the minimal contacts necessary to establish personal jurisdiction over it by a Minnesota court.

Although it is true Madison does not have any direct contacts with this state, its indirect contacts cannot be ignored. Madison acknowledges that national trade journals containing its advertisements are periodically distributed in Minnesota. Broich, the president of Now Foods, claims he has " * * * *regularly* observed advertisements of Madison * * * in several nationally distributed trade publications including Prepared Foods, Food Engineering and Food Processing" (emphasis added). These statements are sufficient to conclude Madison has had a number of contacts with Minnesota which cannot be characterized as random, isolated, or fortuitous. Logic dictates that Madison intended to solicit customers in whichever state these trade publications appeared. No other reason would exist for insertion of an advertisement in a nationally distributed trade publication.

In determining the nature and quality of the contacts between the defendant and the forum state, it must be ascertained whether the nonresidents purposefully availed themselves of the benefits and protections of Minnesota Law *Dent-Air, Inc. v. Beech*

*Mountain Air Services, Inc.,* 332 N.W.2d 904, 907 (Minn.1983).

Here, Madison purposefully solicited customers in Minnesota; it knew the trade journals would be distributed in this state. Advertising is more than mere inquiry by a prospective seller; solicitation-type contacts may be sufficient to support the exercise of personal jurisdiction. *See e.g., Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 779–81, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984) (where magazine publisher "has continuously and deliberately exploited the New Hampshire Market, it must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine").

I would affirm the trial court's order denying Madison's motion to dismiss for lack of personal jurisdiction. Sufficient minimum contacts exist where Madison advertised in national trade journals periodically distributed in Minnesota.

RANDALL, Judge (dissenting).

I join in the dissent of Judge Nierengarten.