**Frank J. STANGEL, Appellant,**

v.

**John RUCKER, et al., Respondents,**

**Virginia A. Starks, et al., Defendants.**

**No. C1–86–1235.**

Court of Appeals of Minnesota.

Dec. 30, 1986.

Reviews Denied March 13, and March 25, 1987.

See also, Minn.App., 355 N.W.2d 489.

Thomas E. Wilson, St. Paul, William Starr, Minneapolis, for appellant.

Randall W. Sayers, St. Paul, for respondents.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and FORSBERG, JJ.

## OPINION

SEDGWICK, Judge.

This appeal is from an order dismissing appellant's tort suit against respondents for lack of personal jurisdiction. Respondents noticed review of the district court's denial of their motion for attorney's fees. We affirm.

## FACTS

This suit arose after a custody dispute between appellant Frank Stangel and his ex-wife, Virginia Stangel. During their

dissolution proceeding, she was granted temporary custody of their minor son, Frank, Jr., subject to Frank's right to reasonable visitation. In June 1982, several months after she received temporary custody, Virginia filed a unilateral notice of dismissal and moved with Frank, Jr., to Louisiana, where many of her relatives live.

In July 1982, Frank successfully moved to have the notice of dismissal vacated. The family court held that the dismissal was improper, ordered Virginia to return Frank, Jr., to Minnesota, and granted temporary custody to Frank on the ground that Virginia's actions deprived him of his right to reasonable visitation.

When the marriage was dissolved in November 1983, Virginia was awarded custody of Frank, Jr., and given permission to move with him outside Minnesota. In December 1983, they moved to Louisiana.

In June 1984, Frank brought this tort suit against Virginia, her mother, the lawyer who filed her notice of dismissal, and respondents John and Cornelia Rucker. The Ruckers are Virginia's aunt and uncle. Frank alleges that the defendants conspired to remove Frank, Jr., from Minnesota in violation of court order, unlawfully withheld information from him as to Frank, Jr.'s whereabouts and well-being, and conspired to deprive him of custody and visitation with the intent of inflicting emotional harm.

The Ruckers are nonresidents of Minnesota and were served in their home state of Louisiana. They own no property in Minnesota and were never present in Minnesota on a matter related to this suit.

The Ruckers first moved to dismiss for lack of personal jurisdiction in October 1984. The district court denied their motion without prejudice to give the parties time to conduct discovery limited to the jurisdiction issue.

The Ruckers renewed their motion in April 1986. The district court dismissed the suit against the Ruckers, finding that they lacked sufficient contacts with Minnesota to be subject to long-arm jurisdic-

tion. It denied their request for costs and attorney's fees, however, because it found there was a legitimate basis for the suit.

## ISSUES

1. Did the trial court err in granting respondents' motion to dismiss for lack of personal jurisdiction?

2. Did the trial court err in denying respondents' motion for attorney's fees?

## ANALYSIS

A. *Personal Jurisdiction.*

Personal jurisdiction over a nonresident defendant may be exercised only where the requirements of the statute and of the due process clause of the United States Constitution are met. Minn.Stat. § 543.19, subd. 1(d) (1984) provides for personal jurisdiction over a nonresident individual who, as to a cause of action arising from the following,

[c]ommits any act outside Minnesota causing injury * * * in Minnesota, subject to the following exceptions when no jurisdiction shall be found:

(1) Minnesota has no substantial interest in providing a forum; or

(2) the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice * * *.

This statute was intended to extend long-arm jurisdiction to the maximum extent permissible by constitutional due process requirements. *Vikse v. Flaby*, 316 N.W.2d 276, 281 (Minn.1982). The permissibility of this attempted exercise of jurisdiction may therefore be tested by whether it would be constitutional. *See Rostad v. On-Deck, Inc.*, 372 N.W.2d 717, 719 (Minn.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 528, 88 L.Ed.2d 86 (1985).

When a defendant challenges personal jurisdiction, the burden is on the plaintiff to prove the minimum contacts necessary for due process. *Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 293, 240 N.W.2d 814, 816 (1976). On a

motion to dismiss for lack of jurisdiction, the facts alleged in plaintiff's complaint and supporting affidavits are taken as true. *Marquette National Bank v. Norris*, 270 N.W.2d 290, 292 (Minn.1978).

■ In Minnesota, the following five-factor test is used to determine whether there is a constitutional basis for jurisdiction:

(1) the quantity of contacts with the forum state;

(2) the nature and quality of contacts;

(3) the source and connection of the cause of action with these contacts;

(4) the interest of the state in providing a forum; and

(5) the convenience of the parties.

*Rostad*, 372 N.W.2d at 719–20. The first three factors are primary; the last two receive less consideration. *Id.* at 720.

Frank argues that the following alleged facts are sufficient contacts for jurisdiction:

(1) On July 10, 1982, Frank, in Minnesota, called Cornelia Rucker's sister in Louisiana and asked to speak to Virginia. Cornelia got on the phone and denied that Virginia and Frank, Jr., were there and denied knowing where they were. Frank, however, could hear his son's voice in the background.

(2) The Ruckers paid $30,000 in legal fees to a Minnesota law firm representing Virginia in the dissolution proceeding.

(3) The Ruckers provided for care of Frank, Jr., after they were told that he had been unlawfully removed from Minnesota, by letting him live with them and helping to pay his nursery school bills.

*Quantity of contacts.*

■ There are very few contacts with Minnesota. The last "contact," the Ruckers' care of Frank, Jr., in Louisiana, has nothing to do with the forum state and therefore is not a contact. A nonresident's contacts with the forum *state*, not with *residents* of the forum, determine whether minimum contacts exist. *West American*

*Insurance Co. v. Westin, Inc.*, 337 N.W.2d 676, 679 (Minn.1983).

■ When the quantity of contacts is minimal, their nature and quality become dispositive. *Maiers Lumber & Supply, Inc. v. Chancey Trailers*, 354 N.W.2d 585, 587 (Minn.Ct.App.1984).

*Nature and Quality of Contacts*

■ In reviewing the nature and quality of contacts, we look at whether the nonresidents " 'purposefully availed' themselves of the benefits and protections of Minnesota law" or whether they were "brought into contact incidentally through the unilateral activity of the plaintiff." *Dent-Air*, 332 N.W.2d at 907.

The phone call in which Cornelia allegedly lied to Frank, which was initiated by him, is a weak basis for jurisdiction under this factor. *See Kreisler Manufacturing Corp. v. Homstad Goldsmith, Inc.*, 322 N.W.2d 567, 572 (Minn.1982) (defendants subject to jurisdiction have usually initiated contacts with the forum state).

The Ruckers' payment of legal fees is a stronger example of purposeful activity, but it is accorded little weight under the next factor. It would probably be insufficient by itself to support jurisdiction. *See BLC Insurance Co. v. Westin, Inc.*, 359 N.W.2d 752 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Apr. 15, 1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 132, 88 L.Ed.2d 109 (1985) (purchase of over $20,-000 of goods and services in Minnesota would not be sufficient contact); *Janssen v. Johnson*, 358 N.W.2d 117, 120 (Minn.Ct.App.1984) (an "isolated purchase of goods from a Minnesota seller by a nonresident is not enough to confer jurisdiction").

*Source and Connection of Cause of Action With Contacts.*

Under this factor we consider the relationship between the contacts and the cause of action. *See, e.g., Hanson v. John Blue Co.*, 389 N.W.2d 523, 527 (Minn.Ct. App.1986), *pet. for rev. denied* (Minn. Aug. 13, 1986).

Frank's phone conversation with Cornelia has a strong connection with this lawsuit, since he is suing the Ruckers for unlawfully withholding from him information about his son. *See, e.g., Dent-Air,* 332 N.W.2d at 908 (contacts gave rise to cause of action and thus are properly connected to it).

The payment to Virginia's attorneys in the dissolution action has only a remote connection to this suit. Frank attempts to connect the payment with this lawsuit by alleging that the defendants conspired "during the pendency of the dissolution matter." That is a very tenuous connection.

### Interest of Forum

Frank argues Minnesota has a strong interest in providing a forum for this suit because his action is time-barred in Louisiana. This is not a sufficient basis for jurisdiction. *See West American,* 337 N.W.2d at 681 (fact that Minnesota is only available forum does not confer jurisdiction). Moreover, Frank can still sue the other defendants.

### Convenience of Parties

Minnesota is not a particularly convenient forum, since only one of the defendants resides here, and the locus of this lawsuit is as much Louisiana as Minnesota.

Frank does not address this five-part test. Instead, he relies on the following two arguments.

First, he argues that nonresident defendants need not have any direct contact with the forum state if they have participated in a tortious conspiracy injuring a Minnesota resident in Minnesota. *See Hunt v. Nevada State Bank,* 285 Minn. 77, 172 N.W.2d 292 (1969), *cert. denied,* 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970).

In *Hunt,* the supreme court held that Minnesota had jurisdiction over nonresidents who had conspired to convert the assets of an insurance company whose policyholders were primarily Minnesotans. It stated:

> Once participation in a tortious conspiracy—the effect of which is felt in this

state—is sufficiently established, actual physical presence of each of the alleged conspirators is not essential to * * * jurisdiction.

285 Minn. at 109, 172 N.W.2d at 311.

However, *Hunt* does not stand for the proposition that minimum contacts are unnecessary whenever a conspiracy with in-state effects are alleged, or that such an allegation is itself a sufficient showing of minimum contacts.

In *Hunt,* the supreme court reasoned that since the nonresident conspirators would be entitled to rely on Minnesota law to uphold lawful agreements, it was fair to require them to defend an action based on injuries to Minnesota citizens as a result of unlawful agreements. *Id.* at 111–12, 172 N.W.2d at 312. Frank has not made a similar showing that the Ruckers have purposefully availed themselves of the benefits of Minnesota's laws in a matter related to this suit.

Second, Frank argues that the phone conversation is a sufficient contact because he is suing for intentional infliction of emotional distress, and an intentional tortious act injuring a forum resident is a sufficient basis for jurisdiction. *See Kopperud v. Agers,* 312 N.W.2d 443, 445 (Minn.1981).

In *Kopperud,* the supreme court held there was personal jurisdiction over a nonresident defendant who was being sued for fraud and securities violations arising from the sale of promissory notes to Minnesota residents which purported to be secured, but were not. Although the defendant's activities occurred in Arizona, *Kopperud* does not stand for the proposition that any intentional tort which causes in-state injury provides a sufficient basis for jurisdiction. The court stated:

> Our long-arm statute * * * does not confer jurisdiction whenever a tort is committed by a nonresident. * * *
>
> *   *   *   *   *   *
>
> This is not a case of an isolated or unforeseeable contact with Minnesota. [The defendant] purposefully availed himself of this state to carry out a scheme to defraud investors. Although

his direct contacts with this state were limited, he was instrumental in setting in motion the fraudulent scheme and in keeping it going.

312 N.W.2d at 445. Here, the Ruckers' contact which is alleged to be an intentional tort (the phone conversation) was isolated and not purposeful in the sense of invoking the benefits of Minnesota law.

B. *Attorney's Fees.*

The trial court denied the Rucker's motion for costs and attorney's fees under Minn.Stat. § 549.21 (1984). It found that this action was "not totally lacking in foundation or [brought] solely for the purpose of harassment." The trial court's decision will not be reversed absent an abuse of discretion. *See Blattner v. Forster,* 322 N.W.2d 319, 321 (Minn.1982). The Ruckers have failed to demonstrate that Frank's lawsuit or his opposition to their motion to dismiss was frivolous or that he acted in bad faith. The trial court acted within its discretion.

## DECISION

The trial court did not err in granting respondents' motion to dismiss or in denying their motion for costs and attorney's fees.

Affirmed.