**In re the Marriage of Glenna MAHO-NEY, a/k/a Glenna M. Mahoney, petitioner, Appellant,**

v.

**Gene MAHONEY, a/k/a Gene T. Mahoney, Respondent.**

Nos. C3-88-396, C8-88-1348.

Court of Appeals of Minnesota.

Dec. 13, 1988.
Review Denied Feb. 10, 1989.

Susan A. Miller, Robert E. Salmon, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Wilbert E. Hendricks, Hendricks Law Firm, Pine River, for appellant.

Harlan E. Smith, Walker, for respondent.

Considered and decided by SCHUMACHER, P.J., and FOLEY and HUSPENI, JJ., without oral argument.

## OPINION

FOLEY, Judge.

On February 19, 1988, appellant Glenna Mahoney, a/k/a Glenna M. Mahoney, appealed from an order vacating prior orders of the trial court. Final judgment was then entered in the trial court, and Glenna filed a subsequent appeal from that judgment. These appeals have been consolidated for review. Since appeal has now been properly taken from the final judgment, the issue of appealability of the order is rendered moot. We affirm.

## FACTS

Glenna and respondent Gene Mahoney, a/k/a Gene T. Mahoney, were married in Oakland, California on January 29, 1949. The couple lived in California until 1968, when they moved to Huntsville, Alabama. In May 1977, the couple separated. Gene remained in Alabama and Glenna moved to Minnesota.

In March 1987, the parties received a divorce "a mensa et thoro" from an Alabama court. Soon thereafter, Glenna began dissolution proceedings in Minnesota.

The trial court in Minnesota found that it had in rem jurisdiction over only the marital relationship of the parties and dissolved that relationship. Further, it found that it did not have personal jurisdiction over Gene and as a result could not render judgments with respect to spousal maintenance, property settlement, or attorney fees and costs as requested by Glenna.

## ISSUES

1. Did the trial court err in finding that it did not have personal jurisdiction over Gene?

2. Should an Alabama divorce "a mensa et thoro" be given full faith and credit in Minnesota?

## ANALYSIS

An appellate court is not bound by the ultimate legal conclusions of a trial court. *See Durfee v. Rod Baxter Imports, Inc.,* 262 N.W.2d 349, 354 (Minn.1977). Accordingly, this court must determine whether the trial court correctly applied applicable law. *See A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.,* 260 N.W.2d 579, 582 (Minn. 1977).

1. Glenna argues on appeal that the trial court's finding that it did not have personal jurisdiction over Gene was erroneous.

The Minnesota Supreme Court has articulated the test which the state must satisfy in order to properly achieve personal jurisdiction over a nonresident defendant:

A Minnesota court must resolve two issues before it can exercise personal jurisdiction over a non-resident defendant. It must determine first whether the statutory standard of our long-arm statute, Minn.Stat. § 543.19 (1986) is satisfied, and, second, whether there exists such minimum contacts between the defendant and this state that the exercise of personal jurisdiction would not offend due process.

*Sherburne County Social Services v. Kennedy,* 426 N.W.2d 866, 867 (Minn.1988) (citations omitted).

The long-arm statute in Minnesota, Minn. Stat. § 543.19, (1986), provides in part:

As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over * * * any nonresident individual * * * in the same manner as if * * * the individual were a resident of this state. This section applies if * * * the * * * nonresident individual:

(a) Owns, uses, or possesses any real or personal property situated in this state, or

(b) Transacts any business within the state, or

(c) Commits any act in Minnesota causing injury or property damage, or

(d) Commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions * * *:

First, Glenna asserts that long arm jurisdiction should apply under Minn. Stat § 543.19 1(a). Glenna asserts that she and Gene owned a farm and sold it by contract for deed to her sister and nephew. Glenna maintains that Gene refused to execute a deed of conveyance to the purchasers. However, on March 18, 1987, Gene quitclaimed all of his "right, title, interest, claim and demand in and to that certain lot." As such, we conclude that the quitclaim extinguished all of Gene's rights to the Minnesota property, and Glenna's claims are without merit.

Next, Glenna asserts that personal jurisdiction can lie under Minn.Stat. § 543.19 1(c) and (d) because Gene allegedly committed acts either inside or outside of Minnesota causing injury or property damage inside Minnesota. Specifically, she asserts that in September 1986, while in Minnesota, Gene threatened to dispossess Glenna's relatives of the property. Glenna further asserts that Gene made fraudulent claims during the Alabama proceedings, and that she was under duress when she agreed to the settlement agreement. In her attorney's words, "That the wife would consent to such a meager award itself proclaims the duress under which she must

have operated." She asserts that the fraudulent threats themselves were acts both in and out of Minnesota that caused injury in Minnesota.

We consider all of Glenna's complaints only allegations. This is not a tort action, it is a dissolution action, and there is no conclusive proof that Gene has committed a tort either in Minnesota or Alabama. The petition does not set forth a cause of action based on tort, and she did not plead fraud with the requisite amount of specificity.

Accordingly, there is no statutory authority here, and the long-arm statute would not extend to reach the nonresident Gene.

While we find no statutory authority here, keeping within the spirit of our decision in *Stangel v. Rucker*, 398 N.W.2d 602 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. March 13 and March 25, 1987), a constitutional analysis is appropriate. In *Stangel*, we held:

> This statute was intended to extend long-arm jurisdiction to the maximum extent permissible by constitutional due process requirements. The permissibility of this attempted exercise of jurisdiction may therefore be tested by whether it would be constitutional.

*Id.* at 604 (citations omitted).

*Constitutional Analysis*

■ The United States Supreme Court has outlined the applicable constitutional standard of fundamental fairness, stating that

> due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citations omitted).

■ The court must examine five factors to determine whether minimum contacts exist between a nonresident defendant and the state:

(1) The quantity of contacts with the state;

(2) The nature and quality of those contacts;

(3) The connection or relationship between the contacts and the cause of action;

(4) The state's interest in providing a forum; and

(5) The relative convenience of the parties.

*Marquette National Bank of Minneapolis v. Norris,* 270 N.W.2d 290, 295 (Minn.1978)

The first three factors are primary, the last two receive less consideration. *Rostad v. On–Deck, Inc.,* 372 N.W.2d 717, 720 (Minn.1985), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985).

Glenna argues that the following alleged facts are sufficient contacts for jurisdiction: (1) The parties went to Minnesota for regular summer vacations over a 16–year period from 1961 to 1977; (2) In the 1960's, the parties purchased a tract of land in Minnesota; (3) In 1977, Gene took Glenna to Minnesota. Periodically, Gene stayed with Glenna from 1977 to 1985 and would telephone her at least once a month during that time; and (4) various other allegations concerning alleged "threats" by Gene regarding eviction of Glenna's relatives.

*Quantity Of Contacts*

■ A nonresident's contacts with the forum *state,* not with *residents* of the forum, determine whether minimum contacts exist. *West American Insurance Co. v. Westin, Inc.,* 337 N.W.2d 676, 679 (Minn. 1983). Gene's contacts are minimal at best, and all of the alleged contacts upon which Glenna relies are contacts that Gene had with residents of the forum.

■ When the quantity of contacts is minimal, their nature and quality become dispositive. *Maiers Lumber & Supply, Inc. v. Chancey Trailers,* 354 N.W.2d 585, 587 (Minn.Ct.App.1984).

*Nature And Quality Of Contacts*

In examining the nature and quality of contacts, we review whether the nonresi-

dent "purposefully availed" himself of the benefits and protections of Minnesota law or whether the nonresident was "brought into contact incidentally through the unilateral activity of the plaintiff." *Dent–Air, Inc. v. Beech Mountain Air Service, Inc.,* 332 N.W.2d 904, 907 (Minn.1983).

The summer vacations and periodic stays with Glenna and the alleged threats by Gene are a weak basis for jurisdiction under this factor. We infer that Glenna initiated some of the contact, and we do not consider Gene's conduct to rise to the level of purposefully availing himself of the benefits and protections of Minnesota law.

*Source And Connection Of Cause Of Action With Contacts*

Next, we consider the relationship between the contacts and the cause of action. *Hanson v. John Blue Co.,* 389 N.W.2d 523, 527 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Aug. 13, 1986). The Minnesota vacations and the periodic stays have no connection with the dissolution action. The alleged threats made by Gene have not been substantiated by a court and their connection to the dissolution action is tenuous. Further, the property that Gene purchased no longer has any connection to the dissolution since he quit-claimed his entire interest in that land to Glenna.

*Interest Of Forum*

Glenna argues that Minnesota has a strong interest in providing a forum for Glenna because she is an elderly woman with little education who was allegedly deprived of an equitable share of her marital property. At the time of the Minnesota proceedings, Glenna was 65 and Gene was 62. She cites cases allowing jurisdiction to lie in paternity actions. This reliance is misplaced. Jurisdiction was proper in the paternity cases where a tort had occurred in the state attempting to secure jurisdiction. Such is not the case here, as Glenna has failed to prove that a tort has been committed in Minnesota.

*Convenience Of The Parties*

Glenna argues that Minnesota is *no less* convenient a jurisdiction than any other. If she is willing to concede this, she is not making a strong argument that Minnesota is the most convenient forum for the parties. We do not consider Minnesota a particularly convenient forum since only one of the parties resides here.

Accordingly, we hold that the long-arm statute does not reach Gene in this case, and minimum contacts do not exist between Gene and Minnesota sufficient to sustain the state's exercise of personal jurisdiction over him.

■ 2. Gene argues that the Alabama judgment must be given full faith and credit by the Minnesota courts, and that on this basis the appeal should be dismissed. Glenna acknowledges that as a general matter, foreign dissolution decrees are entitled to full faith and credit from the Minnesota courts.

The standard for giving full faith and credit to a foreign judgment is found in *Roche v. McDonald,* 275 U.S. 449, 48 S.Ct. 142, 72 L.Ed. 365 (1928).

It is settled by repeated decisions of this Court that the full faith and credit clause of the Constitution requires that the judgment of a State court which had jurisdiction of the parties and the subject-matter in suit, shall be given in the courts of every other State the same credit, validity and effect which it has in the State where it was rendered, and be equally conclusive upon the merits; and that only such defenses as would be good to a suit thereon in that State can be relied on in the courts of any other State.

*Id.* at 451–52, 48 S.Ct. at 143.

In *Drummond v. Drummond,* 466 So.2d 974 (Ala.Civ.App.1985), the court stated:

Since 1852 Alabama has allowed two kinds of divorces. Divorce a vinculo matrimonii, a divorce from the bonds of matrimony, is an absolute divorce which severs all legal bonds between the parties. Divorce a mensa et thoro, a divorce from bed and board, is a legal separation allowing the marriage to continue as to everything *not withdrawn by the decree.*

*Id.* at 976 (emphasis added) (citations omitted).

Here, the Alabama court had both personal and subject matter jurisdiction. Glenna and Gene were in the state of Alabama during the proceedings and represented by counsel. Alabama has enacted statutes enabling the Alabama courts to grant divorces. Further, the Alabama judgment is a final judgment "allowing the marriage to continue as to everything not withdrawn by the decree." *Drummond,* 466 So.2d at 976. The only part of the Alabama judgment that was not final was the severance of the actual bonds of matrimony. Therefore, after reviewing the entire record, it is abundantly clear that we should extend full faith and credit to the Alabama decree.

Finally, Gene's request that Glenna and her attorney be sanctioned on the basis of bad faith is denied.

### DECISION

Affirmed.