In re the Marriage of Traci Inez IMPOLA, Petitioner, Appellant,

v.

Mark Adam IMPOLA, Respondent.

No. CX–90–1075.

Court of Appeals of Minnesota.

Dec. 18, 1990.

Dennis Szymialis, Duluth, for appellant.

Thomas L. Hunt, Duluth, for respondent.

Considered and decided by CRIPPEN, P.J., and FOLEY and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

In October, 1989, appellant Traci Inez Impola commenced action in St. Louis District Court to dissolve her marriage to respondent Mark Adam Impola. Appellant moved the trial court for temporary custody and child support. The trial court granted appellant temporary custody but denied her motion for temporary child support, indicating it lacked personal jurisdiction over respondent to determine the issue. Appellant contends the trial court has jurisdiction by virtue of the long-arm statute and her husband's numerous minimum contacts with the State of Minnesota.[1] We reverse.

## FACTS

Appellant and respondent met in April, 1981 in Proctor, Minnesota while attending classes at Proctor High School. The parties began dating and established a sexual relationship which took place at all times within the State of Minnesota and continued until the birth of their child, MI, on December 6, 1982.

At one point in their relationship, the parties had been engaged, but the marriage was called off by respondent. After the birth of MI, however, the parties again decided to marry. Respondent, while still a resident of Minnesota, formally admitted paternity and claimed the child as a dependent on his 1982 income tax return.

After MI was born, respondent left Minnesota for a period of approximately six years, most of which he spent in the Navy. Respondent returned to Duluth, Minnesota for a short time in 1988, during which the parties were married. Thereafter, respondent returned to Texas where he was served with the petition for dissolution.

## ISSUE

Did the trial court err as a matter of law by concluding it was without jurisdiction to determine the issue of temporary child support?

## ANALYSIS

Appellant contends the trial court erred in denying her motion for temporary child support. She argues the trial court has personal jurisdiction over respondent on the basis of the long-arm statute as well as respondent's sufficient minimum contacts with the State of Minnesota.

An appellate court is not bound by the ultimate legal decisions of the trial court. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). Accordingly, this court must determine whether the trial court correctly applied the law in determining it did not have jurisdiction to order temporary child support. *Mahoney v. Mahoney*, 433 N.W.2d 115, 117 (Minn.App. 1988), *pet. for rev. denied* (Minn. Feb. 10, 1989).

■ In order for a Minnesota court to exercise personal jurisdiction over a non-

1. Respondent has not filed a brief in this matter and did not participate in oral argument pursu-ant to this court's order dated July 16, 1990.

resident defendant, two criteria must be satisfied. First, the long-arm statute, Minn.Stat. § 543.19 (1988), must be satisfied. Second, sufficient "minimum contacts" must exist between the defendant and the State of Minnesota such that assertion of jurisdiction does not violate due process. *Ulmer v. O'Malley,* 307 N.W.2d 775, 777 (Minn.1981). *See also Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (a court may not exercise personal jurisdiction over a nonresident parent to modify child support unless jurisdiction is established by sufficient minimum contacts with the state). Here, the trial court found respondent's contacts with the State of Minnesota were more than adequate to justify the exercise of its jurisdiction. The trial court, however, determined the long-arm statute was inapplicable to the dissolution proceeding brought by appellant. We do not agree.

The Minnesota Long–Arm statute provides in pertinent part:

As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over * * * any nonresident individual * * * in the same manner as if * * * the individual were a resident of this state. This section applies if, in person or through an agent, the * * * nonresident individual:

(a) Owns, uses, or possesses any real or personal property situated in this state or

(b) Transacts any business within the state, or

(c) Commits any act in Minnesota causing injury or property damage, or

(d) Commits any act outside Minnesota causing injury or property damage in Minnesota.

Minn.Stat. § 543.19, subd. 1 (1988).

Appellant asserts that personal jurisdiction can lie under Minn.Stat. § 543.19, subd. 1, because respondent "committed acts in Minnesota causing injury or property damage." Specifically, she asserts that she has been injured by having to raise the child without the aid of respondent. Also significant, however, is appellant's bodily and emotional endurance of pregnancy and childbirth. Appellant contends no tort in a technical sense needs to be found for there to be jurisdiction under the long-arm statute. *See Nelson v. Nelson,* 298 Minn. 438, 440, 216 N.W.2d 140, 142 (1974) (the question "is not so much whether the alleged conduct is technically a tort but, rather, whether it was of a tortious nature involving sufficient minimum contacts with the forum to allow the long-arm statute to be constitutionally applied").

In *Howells v. McKibben,* 281 N.W.2d 154 (1979), the Minnesota Supreme Court determined a Minnesota court could properly exercise personal jurisdiction over the alleged putative father, a Wisconsin resident, in a paternity suit. The court focused on the injury suffered by the complainant mother, determining that the defendant, by failing to perform his statutory duties of support, caused foreseeable injury to the mother in the form of the financial burden and impairment of earning power from having to rear the child alone. *Id.* at 156.

Although paternity has been denominated a tort within the scope of the long-arm statute, we have drawn a distinction between paternity actions and actions for dissolution or for modification of child support which do not involve a complainant's injury within the State of Minnesota. In *Mahoney,* this court held that statutory authority under the long-arm statute did not extend to reach a nonresident respondent in a dissolution action such that the trial court had jurisdiction to render judgment with respect to spousal maintenance, property settlement or attorney fees. 433 N.W.2d at 118. Similarly, in *Ferguson v. Ferguson,* 411 N.W.2d 238 (Minn.App. 1987), we held the long-arm statute did not provide statutory authority to reach a nonresident parent to modify a child support order.

However, we believe the facts of the instant action compel the trial court to assume jurisdiction.[2] In neither *Mahoney*

---

2. The trial court concluded appellant's recourse was to pursue an action through the Revised

nor *Ferguson* did the complainant sufficiently establish her injury within the state to support the trial court's exercise of jurisdiction. In contrast, the conduct giving rise to MI's birth and appellant's injury took place while respondent was a resident of Minnesota and occurred at all times within the state. Of critical importance is that the conception took place in Minnesota, that respondent acknowledged paternity within the state, and that respondent was a resident when the child was conceived, during the pregnancy, and at times thereafter. Implicit in appellant's pleading, claiming the necessity that respondent contribute financially to the care and custody of the parties' child, is the expression of the physical and emotional detriment appellant suffers by bearing and raising the child alone in Minnesota. Both respondent's conduct within the state and the neglect of his duty here has resulted in damage to appellant and has created a legal liability. The long-arm statute is applicable to the instant proceeding.

█ The long-arm statute was intended to confer jurisdiction to the maximum extent within the constraints of constitutional due process requirements. *Vikse v. Flaby*, 316 N.W.2d 276, 281 (Minn.1982). The second prong of analysis requires an examination of such constraints to assure maintenance of the suit does not offend traditional notions of fair play and substantial justice.

In Minnesota, five factors are examined to determine whether there is a constitutional basis for jurisdiction:

(1) The quantity of contacts with the forum state;

(2) The nature and quality of contacts;

(3) The source and connection of the cause of action with these contacts;

(4) The interest of the state providing a forum,

(5) The convenience of the parties.

*Rostad v. On–Deck, Inc.*, 372 N.W.2d 717, 719–20 (Minn.1985) *cert. denied*, 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985).

Uniform Reciprocal Enforcement of Support Act (RURESA), Minn.Stat. §§ 518C.01–.36 (1988). However, resort to a RURESA is neces-

## Quantity of Contacts

█ It is a nonresident's contact with the forum *state*, rather than the nonresident's contacts with the *residents* of the forum, which is determinative of whether minimum contacts exist. *West Am. Ins. Co. v. Westin, Inc.*, 337 N.W.2d 676, 679 (Minn.1983). While it is true most of the acts which appellant argues establishes respondent's minimum contacts arise out of her personal relationship with him rather than his direct contacts with Minnesota, respondent participated in the conception of the child and acknowledged paternity while a resident of the state. Moreover, the parties were married in Minnesota and respondent benefited by taking their child as a state tax deduction. Thus, certain contacts with the state are present.

## Nature and Quality of Contacts

The determinative issue with regard to such contacts, however, is whether the non-residents " 'purposefully availed' themselves of the benefits and protections of Minnesota law," or was "brought into contact incidentally through the unilateral activity of the plaintiff." *Dent–Air, Inc. v. Beech Mountain Air Serv.*, 332 N.W.2d 904, 907 (Minn.1983). We believe respondent "purposefully availed" himself of the benefits of Minnesota law by marrying within the state and by claiming his child as a state tax deduction. It cannot be said that his contacts with the state were brought about pursuant to the dissolution proceeding.

## Source and Connection of Cause of Action with Contacts

█ For jurisdiction to lie, there must be a relationship between the nonresident's contacts with the forum state and the cause of action. *Hanson v. John Blue Co.*, 389 N.W.2d 523, 527 (Minn.App.1986), *pet. for rev. denied* (Minn. Aug. 13, 1986). Here, it is respondent's contact with the state through his marriage that gives rise to the dissolution proceeding at bar. There

sary only where there is no basis for the exercise of personal jurisdiction. *See Kulko*, 436 U.S. at 99–100, 98 S.Ct. at 1700–01.

is a very strong connection between the cause of action and respondent's contact with the state.

*Interest of the Forum*

[T]he most basic interest of our legislature in enacting § 543.19 was to afford maximum protection to this state's residents injured by acts of nonresidents; that is, to extend the extra-territorial jurisdiction of our courts to the maximum limits consistent with constitutional limitations.

*Nelson*, 298 Minn. at 440, 216 N.W.2d at 142. The state has an interest in seeing that appellant may adequately redress her claims. Moreover, not only has appellant suffered financial strain by having to raise a child without contribution by the child's father, the burden has also fallen on the residents of the state by appellant's receipt of AFDC benefits. The interest of the state is furthered by a grant of jurisdiction.

*Convenience of the Parties*

Despite the fact that only one of the parties resides in Minnesota, we do not consider the state a particularly inconvenient forum. The Minnesota Supreme Court has determined that jurisdiction should be asserted under the long-arm statute whenever the minimum contacts are present unless despite the contacts, jurisdiction is improper on forum non conveniens grounds. *Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 299, 240 N.W.2d 814, 819 (Minn. 1976). We do not believe equity requires the issue to be litigated in another jurisdiction. Because respondent's contacts with the state are substantial and related to the cause of action, there is no basis pursuant to which jurisdiction may be declined.

### DECISION

We hold the long-arm statute reaches respondent in this case and that respondent has minimum contacts with the state to satisfy due process requirements.

Reversed.