*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0058**

In re the Marriage of: Maria Suljic, petitioner,
Appellant,

vs.

Ibrahim Suljic,
Respondent.

**Filed September 6, 2016
Affirmed as modified
Jesson, Judge**

Hennepin County District Court
File No. 27-FA-14-2995

Melanie P. Persellin, Jensen Sondrall Persellin & Woods, P.A., Brooklyn Park, Minnesota (for appellant)

Elizabeth M. Pierce, Pierce Richard Law Office, St. Paul, Minnesota (for respondent)

Considered and decided by Jesson, Presiding Judge; Halbrooks, Judge; and Hooten, Judge.

# U N P U B L I S H E D   O P I N I O N

**JESSON**, Judge

Appellant-wife Maria Suljic (wife) challenges the district court's order vacating its marriage-dissolution judgment that divided marital property in Illinois. Because the marriage-dissolution judgment is void for a lack of personal jurisdiction, we affirm. But because the district court also lacked personal jurisdiction when it divided the parties'

property in the legal-separation judgment, we modify the district court's order to also vacate the legal-separation judgment.

## FACTS

Wife and respondent-husband Ibrahim Suljic (husband) married in 1964, in Chicago, Illinois, and own a house in Cook County, Illinois. In January of 2013, wife moved to Minnesota to live with her daughter. On September 6, 2013, wife filed a summons and petition for legal separation in Hennepin County district court; husband was personally served with the petition in Illinois. Husband did not file an answer after he was served with notice that wife would seek a default judgment. Husband's former attorney only contacted wife's lawyer once, and they discussed placing the marital homestead in a trust to benefit the parties' grandchildren.

In December 2013, the district court found that husband was in default and issued a judgment and decree of legal separation. The district court divided the parties' property and ordered that the marital homestead in Illinois be held by the parties as tenants in common and that it be placed in an irrevocable trust created by the parties to benefit their grandchildren.[1] To no avail, wife's attorney attempted to contact husband and his former attorney numerous times so that husband would sign the trust document.

---

[1] In addition to ordering the homestead into a trust, the district court awarded wife annuities, an IRA, checking account balances, and one-half of all personal and tangible property located in the marital home and garage in Illinois. The district court awarded husband annuities, an IRA, checking account balances, a 2000 Lexus, and one-half of all personal and tangible property located in the marital home and garage.

2

In March 2014, wife filed a summons and petition for dissolution of marriage in Hennepin County district court; husband was personally served with the petition for dissolution in Illinois. Wife again sought a default judgment because husband did not respond. On July 28, 2014, the district court issued a dissolution-of-marriage judgment and decree, awarding the marital homestead in Illinois to wife and ordering husband to execute a quit-claim deed to convey the house to wife.[2]

Husband's former attorney died on March 9, 2015.

Wife's attorney registered the dissolution judgment in Cook County circuit court in Illinois in August 2014. In May 2015, a Cook County judge signed the judge's deed transferring the Illinois homestead to wife.

In July 2015, after retaining new counsel, husband filed a motion to vacate the legal-separation and dissolution-of-marriage default judgments in Hennepin County district court. Husband argued that the judgments should be vacated because the legal-separation and marriage-dissolution judgments were void for lack of personal jurisdiction and because husband's failure to answer was based on "excusable neglect." In regards to jurisdiction, husband swore in an affidavit that he had never lived in or owned property in Minnesota and that he only traveled to Minnesota to visit his daughter. On husband's excusable-neglect claim, husband swore in an affidavit that he does not have a good understanding of English and that he took all legal documents and correspondence from wife's attorney to his former attorney, paying him $10,000 in legal fees, plus an additional $5,000 for a

---

[2] All other terms of the property division in the marriage-dissolution judgment and decree remained the same as the legal-separation judgment and decree.

3

Minnesota attorney. Husband swore that he did not understand the nature or meaning of the legal documents. Husband also swore he suffered a stroke in April of 2015. Husband alleged that his former attorney acted unethically by not working on his case and that husband responded as soon as he recovered from his stroke.[3]

The district court held a motion hearing in October 2015, where both parties were heard. In November 2015, the district court denied husband's motion to vacate the legal separation but granted husband's motion to vacate the terms of the default judgment for dissolution of marriage. The district court concluded that husband's motion to vacate the legal-separation judgment based on "excusable neglect" was untimely and that the legal-separation judgment was not void because the court possessed both subject-matter jurisdiction and personal jurisdiction to issue the legal separation. But the district court vacated the marriage-dissolution judgment finding that all four of the factors in *Finden v. Klaas*, 268 Minn. 268, 271, 128 N.W.2d 748, 750 (1964), were met to show "excusable neglect." In its analysis of the first *Finden* factor—whether husband had a "reasonable defense on the merits"—the district court concluded that Minnesota courts lacked personal jurisdiction over husband and that husband did not waive his lack-of-personal-jurisdiction defense.

_____

[3] Husband's son swore in an affidavit that his father was fully aware of the meaning of the legal documents served on him. Husband's daughter swore in an affidavit that her father has a good verbal understanding of English and communicates in English. Both husband's daughter and son stated that husband was angry at wife for leaving Illinois and had a strategy to do nothing when confronted with the legal separation and divorce. Both also assert that husband did not have a stroke in April 2015, although they say he does suffer from hypertension and high blood-sugar levels. The daughter also notes he has "stroke-like symptoms."

Wife now appeals the district court's order vacating the dissolution-of-marriage judgment.

**D E C I S I O N**

Wife argues that the district court abused its discretion in vacating the terms of its dissolution-of-marriage judgment and that the district court properly denied husband's motion to vacate the legal-separation judgment because the district court had personal jurisdiction over husband to divide the couple's property and because husband did not demonstrate "excusable neglect." Husband argues that the district court properly vacated the marriage-dissolution judgment because the district court lacked personal jurisdiction and because husband demonstrated "excusable neglect." Despite not briefing the issue, counsel for husband asked this court at oral argument to vacate the legal-separation judgment arguing it is also void for lack of personal jurisdiction.

While the district court analyzed the issue of whether it had personal jurisdiction over husband under the factors to determine if husband showed "excusable neglect," we believe the jurisdictional issue is central in this case. Thus, we first address whether the district court possessed personal jurisdiction over husband to divide property in the marriage-dissolution judgment. We next address whether husband waived his personal-jurisdiction defense. As part of this waiver discussion, we will consider whether husband made his motion to vacate the judgments in a reasonable time.

We conclude that the district court did not err in determining it lacked personal jurisdiction over husband to issue the marriage-dissolution judgment. We also conclude that the legal-separation judgment is void for the same reason.

5

**I.**      *The District Court Did Not Have Personal Jurisdiction Over Husband*

A district court may grant relief from a final judgment and decree involving the terms of a dissolution of marriage or legal separation if "the judgment and decree or order is void" and a motion to vacate is brought within a "reasonable time." Minn. Stat. § 518.145, subd. 2(4) (2014). A judgment is void if the issuing court lacked personal jurisdiction over a party. *Peterson v. Eishen*, 512 N.W.2d 338, 339–41 (Minn. 1994), *abrogated in part by Bode v. Minn. Dep't of Nat. Res.*, 612 N.W.2d 862, 870 (Minn. 2000) (*Bode II*) (holding that a motion to vacate a void judgment under Minnesota Rule of Civil Procedure 60.02(d),[4] based on a lack of subject-matter jurisdiction, must be brought within a "reasonable time"); *Bode v. Minn. Dep't of Nat. Res.*, 594 N.W.2d 257, 261 (Minn. App. 1999) (*Bode I*), *aff'd*, 612 N.W.2d 862 (Minn. 2000). This court reviews de novo legal issues concerning jurisdiction. *Reed v. Albaaj*, 723 N.W.2d 50, 55 (Minn. App. 2006). A district court's findings of fact will not be set aside unless "clearly erroneous." *Kornberg v. Kornberg*, 525 N.W.2d 14, 19 (Minn. App. 1994), *aff'd*, 542 N.W.2d 379 (Minn. 1996).

Minnesota Statutes section 518.07 (2014) provides that no dissolution shall be granted unless one of the parties has resided in the state for not less than 180 days. This statute gives district courts subject-matter jurisdiction over a marriage, and a dissolution granted in violation of the section is void. *Jones v. Jones*, 402 N.W.2d 146, 148 (Minn. App. 1987). Thus, the district court had subject-matter jurisdiction to issue a decree on the

---

[4] Minnesota Statutes section 518.145, subdivision 2 (2014), which applies to dissolution-of-marriage and legal-separation judgments and decrees closely mirrors rule 60.02, which applies to civil judgments in general. *Shirk v. Shirk*, 561 N.W.2d 519, 522 n.3 (Minn. 1997). Thus, case law interpreting rule 60.02 is applicable to this case.

status of the marriage because wife had lived in Minnesota for more than 180 days at the time of the divorce decree.

But for a district court to render judgments with respect to property or spousal maintenance, it must also have personal jurisdiction over *both* of the parties. *See Mahoney v. Mahoney*, 433 N.W.2d 115, 116–17, 119 (Minn. App. 1988) (affirming a district court's order finding it did not have personal jurisdiction over a nonresident in order to render judgments over property), *review denied* (Minn. Feb. 10, 1989). The district court has personal jurisdiction over wife as she is a resident of the state and consented to the court's jurisdiction. In regard to a nonresident party, such as husband, two requirements must be met: satisfaction of the long-arm statute and a demonstration of minimum contacts between husband and the state. As this court stated in *Impola v. Impola*:

> In order for a Minnesota court to exercise personal jurisdiction over a nonresident [respondent], two criteria must be satisfied. First, the long-arm statute . . . must be satisfied. Second, sufficient "minimum contacts" must exist between the [respondent] and the State of Minnesota such that assertion of jurisdiction does not violate due process.

464 N.W.2d 296, 297–98 (Minn. App. 1990).

Regarding the first requirement, Minnesota's long-arm statute provides in part:

> As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over . . . any nonresident individual . . . in the same manner as if . . . the individual were a resident of this state. This section applies if . . . the . . . nonresident individual:
> (1) owns, uses, or possesses any real or personal property situated in this state; or
> (2) transacts any business within the state; or

(3) commits any act in Minnesota causing injury or property damage; or

(4) commits any act outside Minnesota causing injury or property damage in Minnesota[.]

Minn. Stat. § 543.19, subd. 1 (2014).

None of these long-arm-statute requirements are satisfied in this case. As the district court found: "Respondent has never lived in Minnesota, and does not own property in Minnesota. He has never done business in Minnesota, nor has he ever caused any harm to anyone within this State."

In addition to meeting long-arm requirements, due process and "traditional notions of fair play and substantial justice" also require that a nonresident have "minimum contacts" with a state for a court in that state to have personal jurisdiction over the party. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (quotation omitted); *Mahoney*, 433 N.W.2d at 118 (quotation omitted). Appellate courts examine five factors to determine whether minimum contacts exist between a nonresident and this state: (1) the quantity of contacts with the state, (2) the nature and quality of those contacts, (3) the connection or relationship between the contacts and the cause of action, (4) the state's interest in providing a forum, and (5) the relative convenience of the parties. *Marquette Nat'l Bank of Minneapolis v. Norris*, 270 N.W.2d 290, 295 (Minn. 1978).

Husband's only contacts with Minnesota are his visits with his daughter. The record does not reflect how many times husband visited Minnesota, but there is no evidence his stays in Minnesota were extensive. In examining the nature and quality of contacts, this court reviews whether the nonresident "purposefully availed" him or herself of the

8

"benefits and protections of Minnesota law." *Mahoney*, 433 N.W.2d at 118–19 (quotation omitted). This court determined in *Mahoney* that summer vacations and periodic visits in this state were a "weak basis for jurisdiction" and did not show that the respondent availed himself of the laws of Minnesota. *Id.* at 119. Likewise here, husband's visits to Minnesota to see his daughter do not show that he purposefully availed himself of Minnesota law. There is also no connection between husband's visits to Minnesota and the legal-separation or marriage-dissolution proceedings. While Minnesota has an interest in providing a forum for its residents to change the legal status of their marriages, on the record presented to this court, Minnesota's interest in dividing marital property located in another state is less so, especially where one of the parties is a nonresident. Finally, as to the relative convenience of the parties, this weighs in favor of husband because he was ill, he lives in Illinois, and the marital property is in Illinois. Therefore, we conclude that husband did not have sufficient minimum contacts with Minnesota to satisfy "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316, 66 S. Ct. at 158 (quotation omitted).

In response, relying on an unpublished opinion of this court, wife argues that the fact that real estate is situated beyond the jurisdiction of a court does not prevent the district court from compelling a transfer of the real estate. Unpublished opinions are not precedential, Minnesota Statutes section 480A.08, subdivision 3(c) (2014), and district courts err "both as a matter of law and as a matter of practice" by relying on an unpublished opinion of this court. *Vlahos v. R&I Constr. of Bloomington, Inc.*, 676 N.W.2d 672, 676 n.3 (Minn. 2004). In addition to being unpublished, that case is factually distinguishable. In it, the husband waived his personal-jurisdiction defense, was served process in

9

Minnesota, and had an address in Minnesota.[5] *Rondeau v. Rondeau*, No. A10-1556, 2011 WL 1642606, at *3 (Minn. App. May 3, 2011).

Because the long-arm statute was not satisfied and because husband lacked minimum contacts with Minnesota, the district court did not have personal jurisdiction over husband to divide the parties' property in a marriage-dissolution judgment and decree.

## II.     *Husband Did Not Waive His Right to Contest Personal Jurisdiction*

Having concluded that the district court lacked personal jurisdiction over husband does not end our analysis because the lack of personal jurisdiction is a defense that may be waived.[6] *Mesenbourg v. Mesenbourg*, 538 N.W.2d 489, 492 (Minn. App. 1995). Wife argues that, even if the district court did not have personal jurisdiction, husband waived his challenge to personal jurisdiction by not raising the defense earlier in the proceedings and because husband's motion to vacate was not brought in a reasonable time. We disagree.

---

[5] Other cases cited by wife are also inapposite. In *Pavelka v. Pavelka*, 116 Minn. 75, 78, 133 N.W. 176, 177 (1911), the district court could compel conveyance of property located out of state because both husband and wife were citizens of Minnesota. In *Thompson v. Nesheim*, 280 Minn. 407, 421, 159 N.W.2d 910, 920 (1968), the district court determined ownership of farmland in Iowa, but the parties submitted to the personal jurisdiction of the court.

[6] Recently the Minnesota Supreme Court began to distinguish between "waiver" and "forfeiture" of rights. *Weitzel v. State*, ___ N.W.2d ___, ___, No. A14-1186, slip op. at 2 n.1 (Minn. Aug. 10, 2016). "Forfeiture is the failure to make a timely assertion of a right," while "waiver is the intentional relinquishment or abandonment of a known right." *Id.* In the past Minnesota appellate courts often used the term "waiver" to refer to what would now be called a "forfeiture." *See, e.g.*, *State v. Beaulieu*, 859 N.W.2d 275, 278 n.3 (Minn. 2015) (acknowledging prior use of "waive" to refer to "forfeiture"), *cert. denied*, 136 S. Ct. 92 (2015). Because the parties briefed and argued this case using the term "waiver" referring to both concepts, and because we would find that husband neither waived nor forfeited his jurisdictional defense, we use the term "waiver" to refer to both concepts, as the distinction does not affect the outcome of this case.

10

Ordinarily, a challenge to personal jurisdiction must be raised in the district court early in the proceedings in a responsive pleading. Minn. R. Civ. P. 12.02, 12.08(a); *Majestic Inc. v. Berry*, 593 N.W.2d 251, 258 (Minn. App. 1999), *review denied* (Minn. Aug. 18, 1999). For example, in *Mesenbourg*, this court found that a personal-jurisdiction defense was waived where an appellant requested and was granted by a district court an opportunity to contest jurisdiction but then failed to do so. 538 N.W.2d at 493. A party's failure to provide the district court with an opportunity to determine the validity of a jurisdictional defense, challenging jurisdiction for the first time on appeal, is a waiver of that defense. *Reed*, 723 N.W.2d at 56.

Here, the district court found that husband acted with due diligence and had a reasonable excuse for not responding to the summonses and petitions.[7] The district court based its legal conclusion on the factual finding that husband did not have the opportunity to raise the jurisdiction defense before entry of judgment because husband relied on his attorney to handle his case and his attorney neglected the matter. The district court further found that husband exercised due diligence because he responded to the marriage-dissolution summons and petition after he recovered from a stroke.

---

[7] Wife's reliance on *Mesenbourg*, *Reed*, and *Majestic Inc.* is misplaced. First, unlike in *Mesenbourg*, husband did not fail to contest jurisdiction after the district court granted him permission. 538 N.W.2d at 493. Second, unlike *Reed*, husband properly challenged jurisdiction for the first time at the district court level, and not on appeal. 723 N.W.2d at 56. Nor is this like *Majestic Inc.*, where the appellant failed to raise his objection to jurisdiction in motion papers during the district court proceedings or in his appellate brief. 593 N.W.2d at 258.

The Minnesota Rules of Civil Procedure are not to the contrary. While rule 12.08 specifies that a defense of lack of jurisdiction must be made in responsive pleadings or else is waived, the rule presupposes that both parties are participating in the litigation. This was not the case here as husband did not participate in the litigation until after the district court issued the default judgments.

Further, Minnesota Statutes section 518.145, subdivision 2(4), provides a mechanism for challenging a void judgment based on a lack of jurisdiction after a judgment is entered. Section 518.145, subdivision 2, provides that a motion to vacate a judgment for lack of jurisdiction must be brought in a "reasonable time."

Wife argues that husband's personal-jurisdiction defense was waived through husband's inaction and that his motion to vacate was not brought in a reasonable time. Relying on *Peterson*, husband argues that a void judgment cannot gain validity with the passage of time. 512 N.W.2d at 341. The traditional rule in *Peterson* that a judgment void for lack of personal jurisdiction may be vacated at any time, was partially abrogated in *Bode II*, 612 N.W.2d at 867, 870, where the Minnesota supreme court concluded that countervailing considerations of finality can sometimes outweigh the validity of a judgment and that a motion to vacate a judgment for lack of subject matter jurisdiction must be made within a "reasonable time." The supreme court in *Bode II*, determined that the motion to vacate was not brought within a reasonable time when it was made 18 years

12

after the initial appeal and the judgment was presumed valid and relied on for 12 years. *Id.* at 870.[8]

This case is far from the 18-year delay in *Bode II*. Here, husband filed a motion contesting jurisdiction around 19 months after the legal-separation judgment was entered and just under 12 months after the dissolution-of-marriage judgment. Wife asserts that husband made a choice not to answer the petitions as a strategy and only chose to become involved once the marital homestead was transferred to wife by a judge's deed. But husband's affidavit states that he was ill, that he relied on his attorney to handle his case, and that he did not understand the legal nature of the documents served on him. The district court credited husband's affidavit by incorporating many of his statements in its findings of fact. We defer to a district court's credibility determination. *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000). Thus, the district court's findings were not clearly erroneous. Based on the district court's factual findings, we conclude that husband brought his motion to vacate the legal-separation and marriage-dissolution judgments in a reasonable time.

In summary, because husband filed a motion to vacate the legal-separation and marriage-dissolution judgments and decrees for lack of personal jurisdiction within a reasonable time and because husband acted on the first opportunity after realizing his attorney was neglecting his case, husband did not waive his right to contest personal jurisdiction.

---

[8] We also note that *Bode II* may be distinguished because it dealt with subject-matter jurisdiction, not the personal-jurisdiction issues raised by this case.

**III.** *The Legal-Separation Judgment Is Void for Lack of Personal Jurisdiction*

Despite failing to file a notice of related appeal regarding the district court's order denying husband's motion to vacate the legal-separation judgment, husband's attorney requested, at oral argument before this court, that we vacate the legal separation on the same grounds we affirm the district court's order vacating the marriage-dissolution judgment: that the district court lacked personal jurisdiction over husband to divide the parties' property.

In general, "a party's failure to address an argument in its brief results in waiver of that argument," *Frank v. Winter*, 528 N.W.2d 910, 913 (Minn. App. 1995), *review denied* (Minn. Apr. 27, 1995), and ordinarily, "we would not address an argument raised for the first time on appeal, particularly when it was not included in the brief." *Majestic Inc.*, 593 N.W.2d at 257. But even where an issue is not raised by the parties, appellate courts may review the issue sua sponte when the interests of justice so require, and "when the reasoning relied upon by the appellate court is neither novel nor questionable." Minn. R. Civ. App. P. 103.04; *State v. Jones*, 516 N.W.2d 545, 548 n.5 (Minn. 1994) (quotation omitted); *State v. Glidden*, 455 N.W.2d 744, 746 (Minn. 1990). "[I]t is the responsibility of appellate courts to decide cases in accordance with law, and that responsibility is not to be diluted by counsel's oversights, lack of research, failure to specify issues or to cite relevant authorities." *State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990) (quotation omitted).

Here, the issue of whether the district court lacked personal jurisdiction to divide property in the legal-separation judgment was raised by husband in the district court.

14

Although husband did not file a notice of related appeal, we conclude it is in the interest of justice for us to review the issue, as we have already determined that the district court lacked personal jurisdiction to divide the property in the marriage-dissolution judgment. Law concerning personal jurisdiction is well established, and addressing the issue would not require us to use reasoning that is novel or questionable. Finally, both parties had the opportunity to brief the question of personal jurisdiction extensively in terms of the marriage-dissolution judgment. Thus wife is not prejudiced by us addressing the issue.

Here, the district court lacked personal jurisdiction to divide the parties' Illinois property in the legal-separation judgment for the same reasons it lacked jurisdiction in the marriage-dissolution judgment: the long-arm statute is not satisfied, and husband did not have minimum contacts with Minnesota. Furthermore, as discussed, husband did not waive his defense on personal jurisdiction. Therefore, the district court erred in denying husband's motion to vacate the legal-separation judgment.

Accordingly, we affirm the district court's order vacating the marriage-dissolution judgment and modify the order to also vacate the legal-separation judgment. For the sake of clarity, we note that all portions of the judgments dealing with the parties' property are vacated, but because the district court had subject-matter jurisdiction over the status of the marriage, the parties' marriage remains dissolved.

**Affirmed as modified**.